IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 11, 2018

**REGINOLD C. STEED v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Davidson County
No. 2015-B-1337    Angelita Blackshear Dalton, Judge**

_____

**No. M2018-00492-CCA-R3-PC**

_____

The Petitioner, Reginold C. Steed,[1] appeals the Davidson County Criminal Court's denial of his petition for post-conviction relief. On appeal, he argues: (1) post-trial counsel provided ineffective assistance in failing to present evidence that the victim allegedly recanted his trial testimony identifying the Petitioner as the perpetrator; (2) the post-conviction court erred in failing to notify him of the date of the post-conviction hearing; and (3) the trial court erred in failing to consider the victim's alleged recantation during sentencing. We affirm the denial of post-conviction relief. However, we remand the case for entry of a corrected judgment form in Count 2, as specified in this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed; Case Remanded**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and J. ROSS DYER, JJ., joined.

Daniel J. Murphy, Nashville, Tennessee, for the Petitioner, Reginold C. Steed.

Herbert H. Slatery, III, Attorney General and Reporter; Courtney N. Orr, Assistant Attorney General; Glenn R. Funk, District Attorney General; and Kent L. Chitwood, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

In April 2015, the Davidson County Grand Jury indicted the Petitioner for attempted first degree murder, especially aggravated robbery, carjacking, aggravated assault, and employment of a firearm during the commission of or attempt to commit a

_____

[1] Although the appellate record contains two different spellings of the Petitioner's name, we will show the Petitioner's name as it appears on his indictment and post-conviction petition.

dangerous felony. State v. Reginold C. Steed, No. M2016-01405-CCA-R3-CD, 2017 WL 1830105, at \*1 (Tenn. Crim. App. May 5, 2017).

**Trial.** The facts presented at trial were that the victim had met the Petitioner through a mutual friend and had spent time with the Petitioner on five or six occasions. Id. On February 18, 2015, the Petitioner and the victim met in the parking lot of a Firehouse Subs restaurant in Nashville so that the Petitioner could repay a $500 loan. Id. After the Petitioner got into the victim's car, he pointed a gun at the victim and demanded that the victim remove his pants. Id. The victim offered the Petitioner his money, shoes, and car, but the Petitioner never took any action to retrieve these items. Id. The victim then tried to grab the gun from the Petitioner, and a struggle ensued that continued into the parking lot. Id. When the victim was unable to wrest the gun away from the Petitioner, he ran back to his vehicle and attempted to start it, and the Petitioner fired three or four shots into his car. Id. at \*1-2. The victim then jumped out of his car and ran to a nearby grocery store, where the police were called. Id. at \*2. As he ran toward the grocery store, the victim heard four additional gunshots fired behind him. Id. During the incident, the victim sustained a gunshot wound to his right wrist and two gunshot wounds to his right leg. Id.

The victim later discovered that his vehicle was missing from the Firehouse Subs parking lot. Id. It was later found in a police impound lot in Jackson, Tennessee, where the Petitioner resided. Id. The vehicle's windshield had been shot, and bullet holes were present in the car's middle console. Id. When this vehicle was located, all the valuables inside, including the victim's cell phone, were missing. Id.

The victim initially told police that he did not know the shooter's name. Id. He also said he was unable to provide them with the Petitioner's phone number because he had stored this number in his cell phone, which was now missing. Id. The morning after the shooting, the victim called his and the Petitioner's mutual friend and was able to provide officers with the Petitioner's full name. Id.

The victim made multiple statements to police, which were consistent with his trial testimony. Id. at \*4. The victim also identified the Petitioner as the perpetrator in a photographic lineup the day after the shooting. Id.

The Petitioner testified that he called the victim on February 18, 2015, for the purpose of purchasing one-quarter of a pound of marijuana from him. Id. When the men had a dispute over the drugs, the victim pointed a gun at the Petitioner. Id. at \*5. As the struggle continued into the parking lot, the Petitioner was able to snatch the gun away from the victim. Id. At that point, the Petitioner said the victim ran back to his car. Id. When he saw the victim reaching toward his center console, the Petitioner believed the

- 2 -

victim was reaching for another gun, and he shot the victim. Id. The Petitioner said he panicked after shooting the victim and drove the victim's car to Jackson so he could talk to his parents. Id.

At the conclusion of trial, the jury convicted the Petitioner of attempted voluntary manslaughter as a lesser included offense of attempted first degree murder, especially aggravated robbery, and aggravated assault but acquitted him of the carjacking and employment of a firearm offenses. Id.

At his sentencing hearing, the Petitioner made an allocution, wherein he maintained his innocence and denied being the shooter. Id. at *6. The Petitioner said he only presented a self-defense theory because trial counsel told him that it was in his best interests to do so. Id. At the conclusion of this hearing, the trial court sentenced the Petitioner to an effective sentence of twenty-seven years. Id. Thereafter, the Petitioner appealed, arguing that the jury returned inconsistent verdicts, that the trial court erred in declining to merge the attempted voluntary manslaughter conviction with the especially aggravated robbery conviction, and that his sentences were excessive. Id. at *7. This court affirmed the Petitioner's convictions and sentences. Id. at *10.

**Post-Conviction.** On August 10, 2017, the Petitioner filed a timely pro se petition for post-conviction relief, alleging that post-trial counsel rendered ineffective assistance by failing to present evidence that the victim admitted he had "wrongfully accused the [Petitioner] of the offenses that he was convicted of on Dec[em]ber 3, 2015" and by failing "to declare a mistrial and ask the court to dismiss the charges with prejudice." Although the record indicates that the Petitioner filed other post-conviction petitions in late August 2017 and December 2017, these petitions are not included in the appellate record.

On October 17, 2017, the district attorney general appointed a special prosecutor in the Petitioner's post-conviction case after determining that "it would be in the interests of justice" to do so. On February 14, 2018, the State filed its response to the post-conviction petition, arguing that post-trial counsel was not ineffective in failing to present the victim's alleged recantation and that the State did not produce illegal evidence because there was no proof the victim's alleged recantation ever existed.

Prior to the post-conviction hearing, the Petitioner expressed a desire to represent himself. The morning of the February 20, 2018 hearing, the post-conviction court, at the Petitioner's request, relieved post-conviction counsel of the duty to represent the Petitioner, allowed the Petitioner to represent himself, and appointed post-conviction counsel as advisory counsel, or "elbow counsel," for the Petitioner after the Petitioner agreed to allow counsel to serve in this capacity.

During the February 20, 2018 post-conviction hearing, the Petitioner presented testimony from Officer Ruthie Marshall, post-trial counsel, and his father. He also testified in his own behalf.

Ruthie Marshall, an officer with the Tennessee Department of Correction, Probation, and Parole, testified that she completed the Petitioner's presentence investigation report. She stated that she did not interview the victim and instead sent the victim a letter informing him that there would be a sentencing hearing in this case and that he could complete a victim impact statement detailing any emotional, mental, or financial damages he sustained as a result of the Petitioner's crimes. Officer Marshall received the victim's impact statement on January 14, 2016. She then mailed a copy of this victim impact statement to the Petitioner's attorney and the district attorney general's office. In addition, she said a copy of the victim impact statement was placed in the district attorney general's file and was filed in the criminal court clerk's office. Officer Marshall asserted that if the victim had recanted his claim that the Petitioner was the perpetrator of these offenses, his recantation would have been included in the presentence report.

At the conclusion of Officer Marshall's direct examination, the Petitioner and the court had the following discussion:

| The Petitioner: | [Judge], again, I wasn't, I wasn't aware that I was having this hearing today. I never received an order saying that evidentiary— |
|---|---|
| The Court: | Well, but you sent a letter to the Court indicating that you knew about the hearing, isn't that what the letter, what did the letter say? Did you get a copy of the letter— |
| The Petitioner: | I didn't, I didn't— |
| The Court: | —well, [State] did you get a copy of the letter? |
| The State: | Judge, I received quite a few letters. I am not sure. |
| The Court: | Well, the letter that I got gave me an indication that you were aware. |
| . . . . | |
| The Petitioner: | I didn't receive a colorable claim order— |

- 4 -

| | |
|---|---|
| The Court: | This is, hold on, sir, please. This letter is dated January 5th and I will read it. It says, and was, it was actually addressed to Ms. Wise. "I'm letting you know right now I will not veer from the issue that I raised in my petition and I will not be manipulated in the least bit, so she can go ahead and dismiss my petition— |
| The Petitioner: | Excuse me. |
| The Court: | —so I can appeal it to the Court of Criminal Appeals." Oh, this was— |
| The Petitioner: | [Judge]— |
| The Court: | —this was— |
| The Petitioner: | —excuse me [Judge]— |
| The Court: | Hold on, sir. Please don't interrupt the Court, "So I can appeal it to the Court of Criminal Appeals for the record and I am not allowing any court appointed attorney to get on my case," but then we kind of ironed that issue out this morning because, well, and then some other information [is] in here that is probably not appropriate for the record, but— |
| The Petitioner: | Yes, ma'am. |
| The Court: | All right. So, but . . . |
| The Petitioner: | [Judge], this, this victim impact statement . . . I had . . . at the sentencing hearing and the victim impact statement that was given to me, I asked the Judge for the record what . . . did the victim impact statement say and he said for the record that that is not, that what the court clerk has given he said that that is not on file and it's on page 26 through 29— |
| The Court: | Okay. |
| The Petitioner: | —of the sentencing hearing transcript, so whatever he, the Judge said that he— |

| The Court: | Okay. |
|---|---|
| The Petitioner: | —he apparently, I know he is not going to lie for the record. |
| The Court: | Well, and I know that, I know that too, but we are here today for this hearing and we are going to proceed. |

During cross-examination, Officer Marshall identified the presentence investigation report in Case No. 2015-B-1337 that she signed and submitted to the court on December 21, 2015, and this document was admitted as Exhibit 1. She confirmed that Exhibit 1 was a fair and accurate depiction of the way the presentence report looked when she submitted it to the court. Officer Marshall then identified the victim impact statement addendum in Case No. 2015-B-1337 that was received from the victim on January 14, 2016, and this document was admitted as Exhibit 2. She confirmed that Exhibit 2 was a fair and accurate depiction of the way the victim impact statement looked when she received and submitted it to the court. Officer Marshall stated that the presentence report in Exhibit 1 and the victim impact statement in Exhibit 2 were the same documents that she had testified to during the direct examination conducted by the Petitioner.

Exhibit 2, the victim impact statement, included a printed form with the victim's handwritten responses. This form was signed by the victim and was not missing any pages. In it, the victim stated that he would be unable to enjoy the use of his right arm and had a permanent scar from the bullet wound because of the injuries inflicted by the Petitioner. The victim also outlined his medical expenses and attached medical records and receipts in support of these expenses. In one section of the victim impact statement, the victim wrote, "[The Petitioner] stole my car, drove it to Jackson, Tenn. Shot out the passenger window [and wind]shield. Window repairs were $300 [and] impound fee and for new keys was $200." Exhibit 2 did not contain a recantation of the victim's trial testimony.

Post-trial counsel, who represented the Petitioner in Case No. 2015-B-1337 during sentencing and on direct appeal, testified that he received a copy of the presentence investigation report and the victim impact statement in Case No. 2015-B-1337 and that these documents were admitted as exhibits during the Petitioner's sentencing hearing. He said that although the Petitioner claimed the victim had recanted his trial testimony that the Petitioner was the perpetrator, this recantation did not occur.

Post-trial counsel said the Petitioner told him that the victim had recanted his trial testimony and asked him several times "to get any statement wherein the victim changed

his story in [the Petitioner's] favor." Upon receiving this information, post-trial counsel repeatedly asked the State for any statement in which the victim recanted his testimony; however, he never received anything. He also said the Petitioner asked the court for a statement wherein the victim recanted his trial testimony but never received such a statement. Post-trial counsel said he was "not aware that [any such statement] ever existed." He reiterated that he "never received a copy of any statement with the victim recanting his story."

During his direct examination of post-trial counsel, the Petitioner told the post-conviction court "he wasn't given a chance to . . . subpoena the victim," and the court responded: "Well, that wouldn't [have] happened at a post-conviction [hearing], sir. . . . [W]e are here on issues related to . . . the effectiveness of your attorney."

When the Petitioner resumed direct examination, post-trial counsel stated that he thought the State agreed to waive the Petitioner's sentencing hearing because it believed it was the "most efficient" way to handle the case and because it thought it was "making [the Petitioner] a fair offer." He said the State's offer was "along the lines of . . . the minimum that [the Petitioner] could have received at the sentencing hearing."

During cross-examination, post-trial counsel stated that although the Petitioner informed him several times that he believed the victim might have made a statement recanting his trial testimony, the Petitioner never provided him with a lead or a source for this alleged statement and told him only to ask the State and the trial court for it, which he did. Post-trial counsel asserted that he did everything that the Petitioner asked him to do with regard to trying to locate this alleged recantation.

Post-trial counsel said he told the Petitioner that he was unable to locate this alleged statement prior to his sentencing hearing. He also told the Petitioner that he could ask the trial court for this alleged statement, which the Petitioner did several times prior to sentencing.

After the conclusion of post-trial counsel's testimony, the Petitioner asserted that he "had never received a copy of or a deadline [for] filing an amended petition." The Petitioner also stated that he had "never received a copy of . . . the colorable claim order, nor the order scheduling the evidentiary hearing." The court replied, "There isn't, we don't do that with these."

Thereafter, the Petitioner testified in his own behalf. He asserted that the trial court admitted that a mistake had been made regarding the victim impact statement; however, the Petitioner later acknowledged that he could have misunderstood the trial court.

On cross-examination, when asked how he learned of the victim's alleged recantation, the Petitioner stated, "I just heard from . . . another source that [the victim] had recanted his testimony and I assumed that that is what had taken place, because . . . my sentencing hearing was . . . put on hold so many times and they tried to get me to waive my sentencing hearing and the State didn't want to go through with the sentencing hearing[.]" The Petitioner admitted that in the copy of the victim impact statement he received, the victim never recanted his trial testimony.

The Petitioner also admitted that he had never received a statement containing the victim's recantation. He reiterated that he had never received "a copy of the colorable claim or the order saying that an evidentiary hearing was scheduled for today," which made him unprepared to "adequately assess this case and . . . make [his] argument."

The Petitioner explained that he first learned of the victim's recantation when his father told him that he had seen a document at the clerk's office indicating the victim did not know who the perpetrator was and that the clerk's office refused to give him a copy of this document. The Petitioner admitted that he had no other evidence that the victim had recanted his testimony identifying him as the perpetrator.

The Petitioner's father, Reginald Steed, Sr.,[2] testified that in December 2015 or January 2016, he went to the clerk's office and saw a note from Officer Marshall in the court file stating that the victim had recanted his story and now claimed that he did not know who had perpetrated the crimes against him. Mr. Steed asked the clerk for a copy of this note, but the clerk refused to provide it. When he returned to the clerk's office at a later time to obtain a copy of this note, it was no longer in the file. Mr. Steed said, "It seemed like [the clerk] just wiped it from the record[.]" However, he believed that all the attorneys on the case had seen this note "because it was on the very front page of the victim impact statement." Mr. Steed maintained that he went to the clerk's office a third time to try to obtain this note and when it was not in the court file, he attempted to contact Officer Marshall regarding this note for approximately a week. However, he was unable to reach her.

On cross-examination, Mr. Steed stated that the note he saw in the clerk's office, which included the victim's recantation of his trial testimony, differed from the victim impact statement admitted as Exhibit 2. He said the note he observed in the clerk's office was handwritten and contained Officer Marshall's signature but did not contain the victim's signature. Although Mr. Steed acknowledged that he was unaware that the Petitioner had several criminal matters pending at the time of his sentencing in this case,

---

[2] We are spelling the Petitioner's father's name as it appears in the transcript from the post-conviction hearing, and we will identify him as Mr. Steed to distinguish him from his son, the Petitioner.

he believed that the note he had seen had a case number ending in "1337." Mr. Steed assumed that the note from the Petitioner's file was what was delaying the Petitioner's sentencing hearing.

On February 28, 2018, the post-conviction court entered an order denying post-conviction relief. In it, the court made the following findings of fact and conclusions of law regarding the Petitioner's claims:

> The only issue that the Petitioner contends in his petition is that his defense attorney failed to locate a document that contained recanted testimony of the victim. The Court is of the opinion that the actions of post-trial counsel for the Petitioner in this case did not constitute deficient representation. The testimony of Ms. Ruthie Marshall at the post-conviction hearing was that she mailed a victim impact statement to the victim and that the victim mailed it back. Ms. Marshall testified that she did not personally speak to the victim and did not include any recanted testimony or evidence of such in the pre-sentence report. [Post-trial counsel] also testified that he was not able to locate a document based on his findings. Mr. Reginald Steed[,] Sr. testified that he saw a document where the victim recanted his testimony at the Clerk's office but was unable to show any proof of such a document. The Petitioner testified that he personally did not see any such document and had no proof that any such document exists. Based on the testimony, the Court finds that the Petitioner has not proven by clear and convincing evidence that a document indicating that the victim recanted his testimony exists, or that his attorney at sentencing was deficient in his representation for failing to find and introduce such evidence. As such, the Court finds that the Petitioner is not entitled to post-conviction relief.

Following entry of this order, the Petitioner filed a timely notice of appeal.

## ANALYSIS

**I. Ineffective Assistance of Counsel.** First, the Petitioner contends that post-trial counsel was ineffective in failing to present evidence that the victim had recanted his trial testimony identifying the Petitioner as the perpetrator. He claims that post-trial counsel discussed the matter with him and was aware that the Petitioner's father, Mr. Steed, had seen this recantation in the victim impact statement. He also asserts that there was no reason to doubt Mr. Steed's credibility regarding the existence of the recantation and that there was nothing in the record to indicate that Mr. Steed confused this case with another one of the Petitioner's cases. The State counters that the post-conviction court properly found that post-trial counsel was not ineffective. We agree with the State.

Post-conviction relief is only warranted when a petitioner establishes that his or her conviction or sentence is void or voidable because of an abridgement of a constitutional right.  T.C.A. § 40-30-103.  The Tennessee Supreme Court has held:

> A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise.  When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve.  The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal citations and quotation marks  omitted); see Felts v. State, 354 S.W.3d 266, 276 (Tenn. 2011); Frazier v. State, 303 S.W.3d 674, 679 (Tenn. 2010).

A post-conviction petitioner has the burden of proving the factual allegations by clear and convincing evidence.  T.C.A. § 40-30-110(f); Tenn. Sup. Ct. R. 28, § 8(D)(1); Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009).  Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it.  Lane v. State, 316 S.W.3d 555, 562 (Tenn. 2010); Grindstaff v. State, 297 S.W.3d 208, 216 (Tenn. 2009); Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense.  Vaughn, 202 S.W.3d at 116 (citing Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975); Strickland v. Washington, 466 U.S. 668, 687 (1984)).  A petitioner successfully demonstrates deficient performance when the petitioner establishes that his attorney's conduct fell "below an objective standard of reasonableness under prevailing professional norms."  Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688; Baxter, 523 S.W.2d at 936).  Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.'"  Id. at 370 (quoting Strickland, 466 U.S. at 694).  "Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim."  Id.

Although the Petitioner claims that post-trial counsel was deficient in failing to present evidence of the victim's recantation, the Petitioner never testified that he told counsel his father had seen the victim's recantation in the court file. In fact, post-trial counsel specifically testified that the Petitioner failed to give him any leads regarding where to find proof of the alleged recantation. He said that despite the absence of any leads, he repeatedly asked the State for proof that the victim had recanted his testimony, but he never received anything. In addition, although the Petitioner's father, Mr. Steed, testified that he just assumed counsel for both parties had seen the victim's recantation because it appeared on the first page of the victim impact statement, he never testified that he discussed this recantation with post-trial counsel. Given this proof, we agree with the State that the Petitioner failed to show that post-trial counsel was deficient in failing to present the alleged recantation.

We also agree with the State that the Petitioner failed to show he was prejudiced by post-trial counsel's performance given that there was no clear and convincing evidence that this recantation ever existed. The only proof supporting the Petitioner's claim is Mr. Steed's testimony that he saw a handwritten note signed by Officer Marshall indicating that the victim now claimed that he did not know who had perpetrated the crimes against him. However, Officer Marshall testified that she never interviewed the victim and that when she received the victim impact statement from the victim in this case, she forwarded it to the court, the district attorney general's office, and the Petitioner's attorney. A review of this victim impact statement shows that the victim clearly identified the Petitioner as the perpetrator and never recanted his trial testimony. Because the Petitioner has failed to establish that the victim's recantation ever existed, he cannot show that he was prejudiced by post-trial counsel's failure to present it as evidence. For all these reasons, the Petitioner has failed to establish that post-trial counsel provided ineffective assistance.

**II. Failure to be Notified of Post-Conviction Hearing.** The Petitioner also contends that the post-conviction court failed to enter an order setting his evidentiary hearing, as required by Tennessee Code Annotated section 40-30-109. He asserts that because he never received notice of the date for his post-conviction hearing, he was denied the opportunity to prepare for the hearing in a meaningful fashion and denied the chance to file an amended post-conviction petition raising additional issues. The State responds that the Petitioner has failed to demonstrate that he did not receive notice of the hearing or that he suffered prejudice from the court's alleged failure to enter an order pursuant to Code section 40-30-109(a). Because the record shows that the Petitioner was informed of the hearing date, requested that he represent himself, and was prepared to present proof the day of the post-conviction hearing, he is not entitled to relief on this claim.

As relevant to this issue, Tennessee Code Annotated section 40-30-109(a) provides:

> The court shall review the case after the district attorney general's response is filed. If, on reviewing the petition, the response, files, and records, the court determines conclusively that the petitioner is entitled to no relief, the court shall dismiss the petition. The order of dismissal shall set forth the court's conclusions of law. If the court does not dismiss the petition, the court shall enter an order setting an evidentiary hearing. The order of dismissal or the order setting an evidentiary hearing shall be entered no later than thirty (30) days after the filing of the state's response. The evidentiary hearing shall be within four (4) calendar months of the entry of the court's order. The deadline shall not be extended by agreement, and the deadline may be extended only by order of the court based upon a finding that unforeseeable circumstances render a continuance a manifest necessity. An extension shall not exceed sixty (60) days.

Here, the Petitioner appears to argue that his failure to receive notice of the post-conviction hearing constitutes a due process violation. Due process in the post-conviction setting demands that the Petitioner have "'the opportunity to be heard at a meaningful time and in a meaningful manner.'" Stokes v. State, 146 S.W.3d 56, 61 (Tenn. 2004) (quoting House v. State, 911 S.W.2d 705, 711 (Tenn. 1995)). Here, the record shows that the Petitioner had ample notice of the post-conviction hearing. On the morning of the hearing, the Petitioner, who was still represented by post-conviction counsel, asked that he be allowed to represent himself. The post-conviction court granted this request and required post-conviction counsel to serve as advisory counsel for the Petitioner. At the beginning of the post-conviction hearing, the Petitioner informed the court that he was ready to call his witnesses, who were already present in the courtroom, to testify. The record shows that Petitioner had prepared a list of questions for each of these witnesses before the hearing and had the opportunity to review those questions with advisory counsel prior to each witnesses' testimony. It also shows that the Petitioner was given wide latitude regarding the presentation of his proof and was able to fully explore his post-conviction claims by calling and questioning Officer Marshall, post-trial counsel, and his father and by presenting testimony in his own behalf. Accordingly, we conclude that the Petitioner received notice of his post-conviction hearing and was given a full and fair hearing on his post-conviction claims, as required by law.

**III. Trial Court's Failure to Consider Victim's Recantation at Sentencing.** Finally, the Petitioner presents a stand-alone claim that the trial court erred in failing to consider the victim's alleged recantation in the victim impact statement at his sentencing hearing. See T.C.A. §§ 40-38-202, -205, -207. We agree with the State that Petitioner

- 12 -

has waived this claim by failing to raise it on direct appeal and that we are precluded from reviewing this issue for plain error.

All post-conviction claims that have been waived must be dismissed. Id. § 40-30-206(f). As Code section 40-30-106(g) states,

> A ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented unless:
>
> (1) The claim for relief is based upon a constitutional right not recognized as existing at the time of trial if either the federal or state constitution requires retroactive application of that right; or
>
> (2) The failure to present the ground was the result of state action in violation of the federal or state constitution.

Id. § 40-30-106(g). While the Petitioner could have challenged the trial court's failure to consider the alleged recantation in the trial court and on direct appeal, he failed to do so. See id.; Reginold C. Steed, 2017 WL 1830105, at *7. Accordingly, he has waived this stand-alone claim. Moreover, this court is precluded from reviewing this issue for plain error. Grindstaff, 297 S.W.3d at 219 ("[T]he plain error rule, which would otherwise permit an appellate court to address the issue sua sponte, may not be applied in post-conviction proceedings to grounds that would otherwise be deemed either waived or previously determined."); State v. West, 19 S.W.3d 753, 756-57 (Tenn. 2000) (concluding that plain error review cannot be applied in post-conviction cases where the grounds for relief have been waived or previously determined).

Lastly, we remand this case to the post-conviction court for entry of a corrected judgment in Count 2 in Case Number 2015-B-1337. The record in this case shows that the trial court merged Count 4 with Count 2, and the validity of this merger is not at issue in this case.[3] See State v. Berry, 503 S.W.3d 360, 364 (Tenn. 2015) (order for publication summarily granting the application of the defendant under Rule 11 of the Tennessee

---

[3] The State has not raised any issue regarding the propriety of the trial court's merger of the aggravated assault conviction with the especially aggravated robbery conviction. Therefore, we will express no opinion regarding the substantive propriety of this merger. Cf. State v. Watkins, 362 S.W.3d 530, 556 (Tenn. 2012) (adopting the Blockburger test for determining whether multiple convictions under different statutes violate double jeopardy); see Berry, 503 S.W.3d at 362 n.2 (order) (expressing no opinion about the substantive propriety of the trial court's merger of two convictions because the State failed to raise the issue).

Rules of Appellate Procedure and reversing a portion of the judgment of the Tennessee Court of Criminal Appeals) ("[T]he judgment document [for the lesser (or merged) conviction] should indicate in the "Special Conditions" box that the conviction merges with the greater conviction. To avoid confusion, the merger also should be noted in the "Special Conditions" box on the uniform judgment document for the greater or surviving conviction."). Therefore, we remand this case to the post-conviction court for entry of corrected judgment form in Count 2, specifically noting in the "Special Conditions" box that the conviction in Count 4 merges with the conviction in Count 2. Id.

## CONCLUSION

The judgment of the post-conviction court is affirmed. However, the case is remanded for entry of a corrected judgment form in Count 2, as specified in this opinion.

_____
CAMILLE R. MCMULLEN, JUDGE