# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT KNOXVILLE

### JANUARY, 1998 SESSION



FILED

**April 2, 1998**

**Cecil Crowson, Jr.**
Appellate Court Clerk

| | | |
|---|---|---|
| **WILLIE L. HICKS,** | ) | No. 03C01-9707-CR-00242 |
| | ) | |
| Appellant, | ) | |
| | ) | Sullivan County |
| vs. | ) | |
| | ) | Honorable R. Jerry Beck, Judge |
| **STATE OF TENNESSEE,** | ) | |
| | ) | (Post-Conviction) |
| Appellant. | ) | |


FOR THE APPELLANT:

GERALD STANLEY GREEN
147 Jefferson Avenue, Suite 115
Memphis, TN 38103

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General & Reporter

SANDY C. PATRICK
Assistant Attorney General
Criminal Justice Division
2nd Floor Cordell Hull Building
425 Fifth Ave. North
Nashville, TN 37243-0943

H. GREELEY WELLS
District Attorney General

BARRY STAUBUS
Assistant District Attorney General
P.O. Box 526
Blountville, TN 37617


OPINION FILED: _____


**AFFIRMED**


CURWOOD WITT
JUDGE

**OPINION**

The petitioner, Willie L. Hicks, appeals pursuant to Rule 3, Tennessee Rules of Criminal Procedure, from the Sullivan County Criminal Court's denial of post-conviction relief. The petitioner pleaded guilty in 1994 of the first-degree murder of Yolanda Riley and the second-degree murder of her sister, Jennifer Riley. In accordance with the plea agreement, he received a life sentence with the possibility of parole in the first-degree murder conviction and a consecutive sentence of fifteen years for second-degree murder. On March 27, 1996, retained counsel filed a timely petition for post-conviction relief alleging that the attorneys[1] who represented the petitioner during the plea bargaining and the submission of the plea were ineffective and that the guilty plea was entered involuntarily. After an evidentiary hearing, the post-conviction judge[2] entered a thorough and detailed memorandum order finding that Hicks had received effective assistance of counsel and that the guilty pleas were entered knowingly and voluntarily. Therefore, the lower court denied Hicks's petition for post-conviction relief.

In this appeal, Hicks contends (1) that his attorneys were ineffective in that they did not investigate and assert all apparently substantial defenses and that they failed to communicate properly with a defendant whose intelligence and understanding were well below average, and (2) that the record does not affirmatively demonstrate that he knowingly, intelligently, and voluntarily waived his right to trial and the privilege against self-incrimination.

For the reasons discussed below, we affirm the judgment of the trial court.

---

[1] Stephen M. Wallace, the public defender, and Mark Slagle, a private attorney, represented Hicks throughout the pretrial proceedings.

[2] The Hon. Frank G. Slaughter, the trial judge who accepted Hicks's guilty pleas, was no longer on the bench at the time of the post-conviction hearing. Judge R. Jerry Beck was appointed to hear the case because Judge Phillis H. Miller was an assistant district attorney at the time of the original indictments.

We begin with a brief summary of the facts as they appear in the transcripts of the post-conviction hearing, the submission hearing, and the preliminary hearing. The two victims and the petitioner were from Clarksdale, Mississippi. When Yolanda Riley decided to enter the Job Corps training program at Bristol, Tennessee, Hicks became upset. Three times he came to Tennessee to persuade her to return with him to Mississippi. The third time, Yolanda's sister, Jennifer, and Jennifer's two small children accompanied him. After spending the weekend with the petitioner and her sister, Yolanda agreed to return to Mississippi. However, after returning to the Job Corps site and meeting with her advisor and two other students, she changed her mind. She and the two students were sitting in a small inner office. The door was locked. Hicks, who was in the outer office, spoke to Yolanda on the telephone. When the conversation ended, Hicks kicked open the locked door, entered the office, and shot Yolanda several times, once execution-style in the back of the head. Then, he fired a single shot at Jennifer who had entered the office. Both women died.

The grand jury indicted the petitioner on two counts of premeditated and deliberate murder, and the state indicated that it would seek the death penalty.[3] When defense counsel traveled to Clarksdale, they discovered that, according to an intelligence test taken before he was eighteen, Hicks had an I.Q. of 59 and deficits in adaptive behavior. Although other test results yielded somewhat higher scores, the state apparently concluded that seeking the death penalty would be problematic under Tennessee Code Annotated section 39-13-203.[4] Hicks was allowed to plead guilty to first-degree murder in the shooting of Yolanda Riley and to second-degree murder in the shooting of Jennifer Riley.

---

[3] A third count charged Hicks with the aggravated assault of Troyan Ford, one of the students in the office. The state dismissed this count after Hicks pleaded guilty.

[4] This statue precludes the death sentence for those who have a functional intelligence quotient of seventy (70) or below and deficits in adaptive behavior if the mental retardation manifested itself during the developmental period or before the defendant reached the age of 18. Tenn. Code Ann. § 39-13-203(a)(1), (2), (3) (1997).

At the guilty plea submission hearing, Hicks acknowledged that he fired the shots that killed the women but denied that he intended to kill them. He also disputed the number of shots that were fired and denied firing directly into Yolanda's head. When the trial judge questioned him more closely, he insisted that he shot the women accidentally. The trial judge then said, "Well, gentlemen, the Court's duty is pretty clear." The district attorney then suggested that the court accept the plea as an Alford plea.[5] The district attorney and defense counsel once again summarized the state's evidence for the court. The evidence would demonstrate that Hicks had brought the gun from Mississippi, that he carried it loaded into the Job Corps offices where he kicked open the locked door, and that one eye-witness heard him say, "I love her. I'm going to kill her." The trial judge then resumed his questioning of the petitioner who agreed that he wanted to waive his rights and plead guilty according to the plea agreement. Nothing more was said about an Alford plea. The trial court accepted the plea and sentenced the petitioner.

The petitioner, his mother, and attorney, Mark Slagle, testified at the post-conviction hearing. Hicks said that his attorneys told him that if he went to trial he would receive the death penalty. Hicks testified that he thought the submission hearing was actually a trial, that the other people in the courtroom were the jury, and that when the trial judge said, "Well, gentlemen, my choice is clear," he thought he had lost his case. Later, he responded "guilty" to the trial judge's question because he thought he had lost. He also said that his attorneys had visited him more than five times and had told him about life sentences and the "lockdown" at Riverbend where he would never see his family. He complained that he had never seen the autopsy photographs proving that he had shot Yolanda in the back of the head. On

---

[5] In Alford, the United States Supreme Court ruled that there was no constitutional error in accepting a guilty plea which contained a protestation of innocence if the defendant had intelligently concluded that it was in his best interests to plead guilty and the record before the judge contained strong evidence of actual guilt. North Carolina v. Alford, 400 U.S. 25, 91 S. Ct. 160 (1970). This court recognized the validity of an Alford or "best interests" plea in Dortch v. State, 705 S.W.2d 687 (Tenn. Crim. App. 1985).

cross-examination he admitted he had signed the guilty plea documents, two before the hearing and one in the court room.

Bertha Hicks, the petitioner's mother, described her son as having a hard time understanding things. He was in special education classes at school. She and other members of her family came up to see him a few days prior to the submission hearing to talk to him about accepting the plea. She said that she told him that it was his decision and that he would have to make up his own mind.

Mark Slagle testified to his experience in handling capital cases as well as other first-degree murder cases. He described the trip that he, Stephen Wallace, and the investigator made to Clarksdale where they interviewed the petitioner's family and friends and obtained his school, medical, and psychological records.[6] The defense moved for and the trial court granted funds so that a psychologist or psychiatrist could examine the petitioner.[7] Defense counsel had complete access to the prosecutor's files. They met with the medical examiner, interviewed available witnesses, and reviewed the investigative reports. Slagle agreed that he sometimes had a difficult time communicating with Hicks. However, he said that when he took his time and explained things carefully, Hicks seemed to understand. He and Wallace explained the terms of the plea agreement very carefully, including maximum and minimum sentences, consecutive sentencing, lesser included offenses, and the rights the petitioner would be waiving. According to Slagle, the defense team took extra pains because of the petitioner's limited intelligence. Slagle believed that the petitioner understood that he was not having a trial and that he was aware of the significance of the guilty plea proceeding. On cross-examination, Slagle agreed that the hearing was unusual, and that he had his doubts as to Hicks's ability to follow the proceedings. He couldn't recall another

---

[6]     Steven Wallace, the public defender, went to Clarksdale a second time.

[7]     Apparently, the expert found that Hicks was competent to stand trial and that he did not qualify as insane under Tennessee law.

5

time when a prosecutor suggested that the court accept an Alford plea. He conceded that the petitioner seemed to be confused at times.[8] However, Slagle believed that Hicks knew he was entering a guilty plea and that he wanted to do it.

The post-conviction judge took the case under advisement, and on February 24, 1997, he filed his "Finding of Fact, Memorandum of Law, Judgment Order" denying petitioner's request for post-conviction relief. In the memorandum, the court recognized that the petitioner's intelligence was a factor that must be considered. The post-conviction judge concluded that the trial judge had satisfied the requirements of Rule 11, Mackey, and Boykin and that the guilty plea had not been coerced. He also found that the trial court had adequately explained the Alford plea and that it was not improper for a district attorney to suggest that the court accept a "best interests plea" as long as there was a strong factual basis for the conviction and the defendant was represented by competent counsel. With respect to the effectiveness of trial counsel, the court specifically accredited Slagle's testimony. He found that both defense attorneys were experienced in criminal law and in capital cases, that they had traveled to Mississippi in an attempt to find useful information, that they met with the petitioner on many occasions, and that they were cognizant of the petitioner's intelligence level and had advised him accordingly. The court concluded that trial counsel had generally represented their client effectively according to the standards established in Strickland v. Washington, 466. U.S. 487, 104 S. Ct. 2052 (1984) and Baxter v. Rose, 523 S.W.2d 930 (Tenn. 1975). Based on the facts before the court, the trial court concluded that, notwithstanding the petitioner's lack of mental development, the petitioner knowingly and voluntarily entered his guilty pleas and received effective assistance of counsel.

---

[8] For example, at one point, the petitioner told the trial court that he had to prove that Troyan Ford was lying. Ford was one of the two students in the room when the petitioner shot Yolanda. Ford was the victim named in the aggravated assault charge. Slagle said that he had no idea why Hicks made that statement. The record indicates that Ford lied when he said that the petitioner hit him with the gun.

6

**Standard of Review**

Because this petition was filed on March 27, 1996, it is governed by the provisions of the 1995 Post-Conviction Procedure Act. Accordingly, the petitioner bears the burden of establishing, at the evidentiary hearing, his allegations by clear and convincing evidence.[9] Tenn. Code Ann. § 40-30-210(f)(1997). Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence. Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901, n. 3 (Tenn. 1992). An appellate court is bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Black v. State, 794 S.W.2d 752, 755 (Tenn. 1990).

**Effective Assistance of Counsel**

The Sixth Amendment of the United States Constitution and Article I, section 9 of the Tennessee Constitution both require that a defendant in a criminal case receive effective assistance of counsel. Baxter v. Rose, 523 S.W.2d 930 (Tenn. 1975). When a defendant claims ineffective assistance of counsel, the standard applied by the courts of Tennessee is "whether the advice given or the service rendered by the attorney is within the range of competence demanded by attorneys in criminal cases." Summerlin v. State, 607 S.W.2d 495, 496 (Tenn. Crim. App. 1980).

In Strickland v. Washington, the United States Supreme Court defined the Sixth Amendment right to effective assistance of counsel. 466 U.S. 668, 140 S. Ct. 2052 (1984). First, the appellant must show that counsel's performance fell

---

[9] We note that the post-conviction judge found that the petitioner had not proven his allegation by a preponderance of the evidence. The preponderance of the evidence was the quantum of proof required prior to the adoption of Tennessee Code Annotated section 40-30-210(f)(1997). See, e.g., McGee v. State, 739 S.W.2d 789 (Tenn. Crim. App. 1989); Clenny v. State, 576 S.W.2d 12 (Tenn. Crim. App. 1978). Although the use of the incorrect standard constitutes error, the petitioner was not prejudiced. If his proof did not reach the preponderance level, it could not be considered "clear and convincing."

below an objective standard of reasonableness under prevailing professional norms, and must demonstrate that counsel made errors so serious that he was not functioning as "counsel" guaranteed by the Constitution. Strickland, 466 U.S. at 687, 104 S. Ct. at 2064. Second, the petitioner must show that counsel's performance prejudiced him, that the errors were so serious as to deprive the defendant of a fair trial, and call into question the reliability of the outcome. Id.

A reviewing court must indulge a strong presumption that counsel's conduct falls within the range of reasonable professional assistance and must evaluate counsel's performance from counsel's perspective at the time of the alleged error and in light of the totality of the evidence. Strickland, 466 U.S. at 695, 104 S. Ct. at 2070. The petitioner must demonstrate that there is a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. Id.

To establish ineffective assistance of counsel in Tennessee, evidence stemming from a failure to prepare a sound defense or present witnesses must be significant. However, a reasonable probability of being found guilty of a lesser charge, or a shorter sentence, satisfies the prejudice requirement of Strickland. State v. Zimmerman, 823 S.W.2d 220, 227 (Tenn. Crim. App. 1991). In cases involving a guilty plea or plea of nolo contendere, the petitioner must show "prejudice" by demonstrating that, but for counsel's errors, he would not have pleaded guilty but would have insisted upon going to trial. See Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985); Bankston v. State, 815 S.W.2d 213, 215 (Tenn. Crim. App. 1991).

In the instant case, all the proof in the record demonstrates that the trial attorneys were effective advocates. They interviewed the witnesses, reviewed the investigative reports, and had access to the district attorney's file. Because the petitioner killed the victims in front of two eye-witnesses, defense counsel decided

8

that the best defense hung on mental capacity and state of mind. They went to Mississippi twice to investigate the petitioner's competence and his familial and educational background. An expert performed additional psychological testing; an MRI revealed no abnormalities. Mark Slagle testified that he spent several hours with the petitioner questioning him about his thought processes. He carefully explained the crimes, the maximum and minimum penalties, the terms of the plea, the length of time the petitioner would have to serve, and consecutive sentencing. Keeping in mind the petitioner's limited mental capacity, he took great care to explain the constitutional rights that would be waived. Defense counsel arranged for the petitioner to have a four-hour visit with his family a few days before the submission hearing. Nothing indicates that petitioner's attorneys were incompetent or that they were in any way ineffective. The evidence in the record totally supports the trial court's conclusion that the petitioner received effective assistance of counsel during the pre-trial discovery, investigations and negotiation that resulted in his guilty pleas.

**Voluntariness of the Guilty Pleas**

When the accused opts to plead guilty, the plea must be voluntarily, understandingly, and knowingly entered to pass constitutional muster. Boykin v. Alabama, 395 U.S. 238, 244, 89 S. Ct. 1709, 1713 (1969). In Tennessee, a plea must be made voluntarily and with full understanding of its consequences. State v. Neal, 810 S.W.2d 131, 134-135 (Tenn. 1992); State ex rel. Barnes v. Henderson, 220 Tenn. 719, 727, 423 S.W.2d 497, 501 (1968). Entry of a guilty plea constitutes a waiver of constitutional rights including the privilege against self-incrimination, the right to confront witnesses, and the right to a trial by jury. Boykin, 395 U.S. at 243, 89 S. Ct. at 1714. Waiver of constitutional rights may not be presumed from a silent record. Id.

The petitioner contends that his plea was not voluntarily entered. According to his testimony, he believed that he was having a trial on the date of the

9

submission hearing. He acknowledged that he signed the plea agreement and the waiver form; however, he alleges that his attorneys told him that he had to sign the papers so that he could go to trial. The petitioner claims that he was coerced into pleading guilty and that his plea violates the principles of North Carolina v. Alford, 400 U.S. 25, 91 S. Ct. 160 (1970). We disagree.

In Alford, the United States Supreme Court allowed the defendant to enter a plea of guilty despite his protestation of innocence. 400 U.S. at 37, 91 S. Ct. at 167. The Court held that "an individual . . . may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his . . . crime [or protests his] innocence." Id. The standard remains "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." Id.

The Alford or "best interests" plea has been recognized in this state. See, e.g., Dortch v. State, 705 S.W.2d 687, 689 (Tenn. Crim. App. 1985); State v. Williams, 851 S.W.2d 828, 830 (Tenn. Crim. App. 1992). Before a Tennessee court can accept any guilty plea, the court must determine that the defendant is pleading guilty voluntarily and with an understanding of the nature of the plea and its consequences. Williams, 851 S.W.2d at 830-831. A trial judge may accept a guilty plea even when the defendant says that he is innocent so long as there is a factual basis for the plea. Williams, 851 S.W.2d at 831. Therefore, we must determine whether the record demonstrates that the petitioner entered his guilty pleas voluntarily and knowingly and whether there was an adequate factual basis for the pleas.

In determining whether a plea of guilty was voluntarily, understandingly, and intelligently entered, this court, like the trial court, must consider all of the relevant circumstances that existed at the entry of the plea. State v. Turner, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995). A reviewing court may

10

look to any relevant evidence in the record to determine the voluntariness of the plea. Id. Rule 11 of the Tennessee Rules of Criminal Procedure and our supreme court's decisions in State v. Mackey, 553 S.W.2d 337 (Tenn. 1977), and State v. McClintock, 732 S.W.2d 268 (Tenn. 1987), control the guilty plea process in Tennessee. Trial judges are required to adhere substantially to the procedure prescribed in the rule. A submission hearing transcript must establish on its face that the trial court substantially complied with the requirements of Rule 11, Boykin v. Alabama and the teachings of Mackey and McClintock. State v. Turner, 919 S.W.2d at 352.

In this instance, the transcript of the submission hearing indicates that, although the trial judge did not adhere to a standard litany of advice, he substantially complied with the mandates of Rule 11 as well as the additional requirements found in Mackey and McClintock.[10] The trial judge advised the petitioner of the constitutional rights under Boykin and specifically asked him if he were waiving those rights. The petitioner responded affirmatively in each instance. We recognize, as did the post-conviction judge and the trial judge, that this petitioner needed some extra assistance in understanding the proceedings. The transcripts of both proceedings demonstrate that in each instance the judge gave due consideration to this defendant's special needs. Moreover, the post-conviction judge accredited the testimony of defense counsel who testified that he and his colleague had carefully and meticulously discussed the plea agreement and the waiver form before the petitioner signed them.

---

[10] The trial court did not advise the petitioner that he was required to answer the court's questions under oath and that his answers could later be used against him in a prosecution for perjury, Tenn. R. Crim. P. 11(c)(5), nor did the court specifically ask whether the plea was the result of conversations with his attorney and the district attorney and not the product of force or coercion. Tenn. R. Crim. P. 11(d). However, these are supervisory rather than constitutionally based requirements. Non-constitutional error cannot be addressed under the Post-Conviction Procedure Act. Tenn. Code Ann. § 40-30-203 (1997); State v. Neal, 810 S.W.2d 131, 137 (Tenn. 1991). Moreover, the petitioner has not alleged any prejudice that he incurred because the trial judge did not specifically address him concerning these matters.

11

The petitioner contends that he did not know and the trial court did not explain the concept of a "best interests" or Alford plea. The record supports this contention. All of the remarks concerning a possible Alford plea were between counsel and the trial judge. The trial court could have and probably should have addressed the petitioner directly and explained the meaning of the terms. However, we cannot see how the failure to understand a legal term such as Alford or how the inability to follow the discussion between counsel and the bench would render the guilty plea involuntary. A "best interests" plea is treated exactly like any other guilty plea except for the defendant's protestation of innocence. It made no difference to the petitioner whether the trial court accepted his plea as an Alford plea or a garden-variety guilty plea.[11] If the petitioner had the information required to make an intelligent decision and if he understood the consequences of pleading guilty to first-degree and second-degree murder, then he entered his plea knowingly and intelligently despite his lack of specific knowledge of North Carolina v. Alford. We find that the record supports the post-conviction court's finding that the petitioner knowingly entered his pleas and that he understood the consequences of his actions.

The record also demonstrates that neither the trial court nor defense counsel coerced the petitioner into pleading guilty. The entry of a plea of guilty to avoid a death sentence or the risk of greater punishment does not, standing alone, make a plea involuntary. Parham v. State, 885 S.W.2d 375, 381 (Tenn. Crim. App. 1994). The petitioner's mother testified that when she and other members of the family discussed the plea bargain with him they made it clear that the choice was his. In fact, the petitioner testified that his mother left the decision to him. Nor does the petitioner's statement that he pleaded guilty because he had no choice necessarily indicate that the plea was obtained by force or coercion. The statement, "I have no choice," may result from awareness of the undesirable aspects of going

---

[11]    In fact, from reading the record, we cannot say for certain that the trial court, after questioning the petitioner more closely, considered this to be an Alford plea.

to trial. The response may well mean that, after considering the options before him, the petitioner concluded that the only intelligent choice was to plead guilty. We have carefully reviewed the record before us, and we have found no evidence that the petitioner was forced, coerced, or even cajoled into pleading guilty.

Having decided that the petitioner entered his guilty pleas knowingly and voluntarily, we must determine whether there was an adequate factual basis for the acceptance of an Alford plea. See State v. Williams, 851 S.W.2d 828, 831 (Tenn. Crim. App. 1992). We are convinced that the factual basis in this case was more than adequate to prove that the petitioner was guilty of first- and second-degree murder. At trial, the state would have proved that Hicks brought a loaded weapon from Mississippi to Tennessee and that he took the weapon with him into the Job Corps building. Then, after kicking down a locked door, Hicks first shot Yolanda and then turned the gun on her sister. Two students witnessed the killings. One witness would testify that Hicks said that he was going to kill Yolanda. The autopsy would show that Yolanda was shot four times and that a shot to the head was fired from close range. At the submission hearing, the petitioner insisted that he shot Yolanda only once. However, it makes little difference whether he shot her once or four times. Even if the petitioner's statement were accepted as true, the other evidence is sufficient to support a finding of premeditation and deliberation.

The evidence in the record demonstrates that, although the trial judge did not follow the exact wording of Boykin, Mackey, and Rule 11, the petitioner knowingly and voluntarily pleaded guilty. The pleas were acceptable as "best interest" or Alford pleas despite the petitioner's protestation of innocence. See Dortch v. State, 705 S.W.2d 687, 689 (Tenn. Crim. App. 1985); State v. Williams, 851 S.W.2d at 830.

**Conclusion**

The evidence in the record overwhelmingly supports the post-

13

conviction court's findings.  The petitioner received effective assistance of counsel and entered his guilty pleas intelligently, knowingly and voluntarily.  We affirm the post-conviction court's denial of the petitioner's request for post-conviction relief.

 

                                 _____

                                 CURWOOD WITT, Judge

CONCUR:

_____

GARY R. WADE, Judge

_____

WILLIAM M. BARKER, Judge

14