IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs September 6, 2018

**RAMONE LAWSON v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**No. 12-00518        J. Robert Carter, Jr., Judge**

_____

**No. W2017-00929-CCA-R3-PC**
_____

Petitioner, Ramone Lawson, appeals from the dismissal of his petition for post-conviction relief following an evidentiary hearing. Petitioner asserts that he was denied effective assistance of counsel which led to his convictions of one count of first degree murder, two counts of attempted first degree murder, and two counts of employing a firearm during the commission of a dangerous felony. After reviewing the briefs of the parties and the entire record, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT H. MONTGOMERY, JR., JJ., joined.

Carlissa Shaw, Memphis, Tennessee, for the appellant, Ramone Lawson.

Herbert H. Slatery III, Attorney General and Reporter; Ronald L. Coleman, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Leslie Fouche, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

A panel of this court summarized the proof presented at trial in the opinion affirming the convictions on direct appeal:

> This case arises from a June 30, 2011 shooting spree in Fox Hollow Apartments in Memphis. From these events, a Shelby County grand jury charged the Defendant with first degree premeditated murder of Martezz Evans, attempted first degree murder of Tristan Mathis, attempted first degree murder of Aaron Wiggins, and two counts of employing a firearm during the commission of a dangerous felony. *See* Tenn. Code Ann. §§

39-12-101, -13-202, -17-1324(b). The Defendant proceeded to trial.

The proof at trial revealed the following facts. On June 30, 2011, the three victims went to Fox Hollow Apartments to visit some girls. While waiting for the females to finish dressing, the group decided to go outside and sit on a green electrical box. Destiny Wright, who lived in the apartment complex, walked by and saw the men sitting there. Because she was unfamiliar with the men, she asked them who they were and where they lived. The men "brush[ed] her off." At that time, the group saw an individual named "Rico" walking in their direction.

Soon thereafter, the Defendant came from behind a wall. No words were exchanged between the men, other than the Defendant saying to the victims, "yea [racial slur] now what's up?", before he started shooting with a forty-caliber [semi-]automatic pistol. An individual named "Skinny G" was also present on the scene. When the shooting started, all three of the victims jumped up off the electrical box. Mathis and Wiggins were able to run away from the Defendant. However, Evans, who was closest to the Defendant when the Defendant emerged from behind the wall, "threw his hands up" in the air. Evans was then shot three times, once in the left eye, once in the left forearm, and once in the back of neck, and he fell to the ground, where he died from his injuries. The Defendant emptied his weapon, running out of bullets before he ceased firing on the group. Six forty-caliber shell casings, one bullet fragment, and one projectile were found on the scene. Although Mathis was able to run away, he suffered a gunshot wound to the foot; Wiggins stated that his right forearm was grazed by a bullet.

Ms. Wright provided a description of the shooter that was similar to the Defendant's appearance. Wiggins and Mathis also identified the Defendant as the lone shooter. After the Defendant was developed as a suspect and brought in for questioning by the police, he admitted to being present at the scene but denied any involvement. While in custody, the Defendant placed a phone call from the jail. During this call, the Defendant can be heard saying to the other individual on the line, "what they got me for is true." When the Defendant was questioned the following day for a second time, he again denied any involvement in the shooting.

The State developed proof of a prior altercation which occurred some days earlier at a local Citgo gas station. Evans, Mathis, and Wiggins

were at that gas station, when Evans and Skinny G got into a verbal disagreement. Rico then walked up and said, "What's up, Mafia?" On this day, Evans and Mathis ended up in a physical confrontation with Skinny G and Rico. According to Mathis, he and Evans "got the best of" Rico and Skinny G during the fight. Moreover, there was also proof at trial that Rico and Evans were members of rival gangs.

*State v. Ramone Lawson*, No. 2013-00324-CCA-R3-CD, 2014 WL 1153268, at *1-2 (Tenn. Crim. App. Mar. 19, 2014), *perm. app. denied* (Tenn. Aug. 26, 2014).

In his brief, Petitioner argues four examples of ineffective assistance of counsel. Three of these can be dispensed with promptly, with no need to summarize any testimony which Petitioner cites to in the record. Petitioner's entire argument on these three alleged examples of ineffective assistance of counsel is set forth exactly as presented in his brief:

> Appellant testified at the Post Conviction hearing that trial counsel failed to seek suppression of any statement he made prior to the signing of the affidavit in his case. Post-Conviction Tr. Vol. 2, 40, 17-10, Feb. 16, 2017. The failure to file a suppression motion is a violation of Appellant's constitutional rights.

> Appellant testified at the Post Conviction hearing that trial counsel failed to seek suppression of any statement made by Aaron Wiggins. Post-Conviction Tr. Vol. 2, 40, 13-17, Feb. 16, 2017. The failure to file a suppression motion is a violation of Appellant's constitutional rights.

> Appellant testified at the Post-Conviction hearing that trial counsel failed to adequately advise him that if he decided not to testify that the State still would be able to use a jail recording against him, and if he had this information he would have testified. Post-Conviction Tr. Vol. 2, 42, 6-15, Feb. 16, 2017. The failure to advise Appellant is a violation of Appellant's constitutional rights.

All three of these issues are waived for appeal. As to suppression of statements by Petitioner and Mr. Wiggins, Petitioner states no legal theory or citations to legal authority which would support his argument. Also, the failure to cite any legal authority in all of the arguments is sufficient in itself to justify waiver on appeal of all three issues. *See* Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court."). The quoted arguments are more like a statement of issues than argument on appeal. For the reasons stated, they are waived.

In the sole issue that is sufficiently argued to allow review, Petitioner asserts that trial counsel rendered ineffective assistance by failing to properly object when victim/witness Aaron Wiggins was declared "unavailable" by the trial court. When Mr. Wiggins was called as a witness at trial, he refused to testify despite being ordered by the trial court to do so. Mr. Wiggins asserted his right under the Fifth Amendment to the United States Constitution not to be forced to incriminate himself.

**Evidence at Post-Conviction Hearing**

Petitioner had two attorneys representing him at trial, who we will identify as "lead counsel" and "second counsel." As the designation implies, lead counsel represented Petitioner for a longer period of time, did most of the trial preparation, and apparently handled most of the work during the trial. Lead counsel passed away prior to the post-conviction hearing. Second counsel testified at the post-conviction hearing.

Second counsel testified that Aaron Wiggins was called at trial to testify as the prosecution's first witness. Mr. Wiggins had previously testified at Petitioner's preliminary hearing in General Sessions Court. However, at trial Mr. Wiggins did not testify because he asserted his right not to testify pursuant to the Fifth Amendment to the United States Constitution. A separate attorney was representing Mr. Wiggins. Mr. Wiggins' attorney met privately with Mr. Wiggins and then confirmed to the trial court that Mr. Wiggins wanted to exercise his Fifth Amendment rights. A recording of Mr. Wiggins' testimony at the preliminary hearing was played for the trial jury pursuant to Tennessee Rule of Evidence 804(b)(1).

Second counsel testified at the post-conviction hearing that this development prevented Petitioner's trial counsels from impeaching Mr. Wiggins with a prior statement inconsistent with his expected trial testimony. The statement was given to a police officer at the hospital not long after the incident of the shooting. The out of court statement would have helped Petitioner's defense, assuming that Mr. Wiggins' trial testimony was the same as his preliminary hearing testimony. Second counsel recalled that he argued at trial that Mr. Wiggins' purported reason justifying his right to assert his Fifth Amendment rights must be closely examined.

Petitioner's trial counsels had the report from a police officer who spoke with Mr. Wiggins at the hospital on the evening of the incident. Second counsel testified that this report indicated that Mr. Wiggins basically said that he (Mr. Wiggins) did not see who had committed the shooting. At the preliminary hearing, Mr. Wiggins identified Petitioner as the shooter. Once Mr. Wiggins became legally unavailable as a witness by exercising his Fifth Amendment rights, this avenue for impeachment of his testimony

was gone. To complicate matters further, the General Sessions Judge at the preliminary hearing *sua sponte* interrupted Petitioner's counsel's cross-examination to require counsel to cease a line of questioning because it was only "discovery."

A transcript of the preliminary hearing was submitted by Petitioner and introduced as an exhibit at the post-conviction hearing. During cross-examination at the preliminary hearing, Mr. Wiggins acknowledged that he had spoken with a police officer at the hospital. However, he testified that he did not provide names or "street names" of the shooter and the people with the shooter, but just described them as "the black dude, the red dude, and the brown dude." He later admitted that he told the police officer that the men were members of a gang and that one of them was named Atrey Hover. However, Mr. Wiggins identified Petitioner as the shooter at the preliminary hearing.

The relevant portion of the trial transcript pertaining to Mr. Wiggins' being declared unavailable as a witness was made an exhibit at the post-conviction hearing. The transcript reflects that neither lead counsel nor second counsel objected to the trial court's ruling based upon the limitations of cross-examination imposed by the General Sessions Court Judge. The concern expressed by second counsel upon Mr. Wiggins' being declared unavailable as a witness at trial was whether enough had been shown to conclude he was actually "unavailable" as a witness.

The Assistant District Public Defender (General Sessions counsel) who represented Petitioner at his preliminary hearing also testified at the post-conviction hearing. She testified that during her cross-examination of Aaron Wiggins, the judge stopped her from asking Mr. Wiggins about the circumstances of a statement he made to police. General Sessions counsel said that she had further questions for Mr. Wiggins which she was prohibited from asking him. She explained that it was her belief that Mr. Wiggins did not know Petitioner's last name. She wanted to hear any description of the shooter that Mr. Wiggins gave to the police and how he knew the shooter was Petitioner.

As to the issue preserved for appeal, Petitioner testified at the post-conviction hearing that Mr. Wiggins "was technically an available witness, he basically just refused to testify," thus Petitioner felt Mr. Wiggins' "statement," apparently a reference to the preliminary hearing testimony, should have been suppressed.

In its order denying relief, the post-conviction court made a factual finding that Mr. Wiggins refused to testify based upon a "Fifth Amendment rationale" and that Mr. Wiggins was represented by an attorney when he asserted the right not to testify. The post-conviction court also made the following factual findings:

> A hearing [at trial] was conducted and the court allowed the previous testimony (preliminary hearing) [of Mr. Wiggins] to be played for the jury.  Petitioner's trial counsel objected, but after a hearing, the court ruled the "prior testimony" to be admissible.

The post-conviction court made the legal conclusion that Petitioner's trial counsels did not render deficient performance in their representation of Petitioner.

**Analysis**

Post-conviction relief is only warranted when a petitioner establishes that his or her conviction or sentence is void or voidable because of an abridgment of a constitutional right.  T.C.A. § 40-30-103.  The Tennessee Supreme Court has held:

> A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise.  When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve.  The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

*Vaughn v. State*, 202 S.W.3d 106, 115 (Tenn. 2006) (internal citations and quotation marks omitted); *see Felts v. State*, 354 S.W.3d 266, 276 (Tenn. 2011); *Frazier v. State*, 303 S.W.3d 674, 679 (Tenn. 2010).  A post-conviction petitioner has the burden of proving the factual allegations by clear and convincing evidence.  T.C.A. § 40-30-110(f); Tenn. Sup. Ct. R. 28, § 8(D)(1); *Dellinger v. State*, 279 S.W.3d 282, 293-94 (Tenn. 2009).  Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it.  *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010); *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009); *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense.  *Vaughn*, 202 S.W.3d at 116 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)).  "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim.  Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an

insufficient showing of one component." *Goad v. State*, 938 S.W.3d 363, 370 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 697).

A petitioner successfully demonstrates deficient performance when the clear and convincing evidence proves that his attorney's conduct fell "below an objective standard of reasonableness under prevailing professional norms." *Id*. at 369 (citing *Strickland*, 466 U.S. at 688; *Baxter*, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id*. at 370 (quoting *Strickland*, 466 U.S. at 694).

We note that "[i]n evaluating an attorney's performance, a reviewing court must be highly deferential and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *State v. Burns*, 6 S.W.3d 453, 462 (Tenn. 1999) (citing *Strickland*, 466 U.S. at 689). Moreover, "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." *Strickland*, 466 U.S. at 688-89. However, we note that this "'deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation.'" *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (quoting *Goad*, 938 S.W.2d at 369).

We will only address the narrow issue presented by Petitioner in his brief: that trial counsel rendered ineffective assistance of counsel by failing to properly object to the State's request that Mr. Wiggins was "unavailable," thereby allowing Mr. Wiggins' prior testimony at the preliminary hearing to become admissible evidence as an exception to the hearsay rule, pursuant to Tennessee Rule of Evidence 804(a)(1) and (b)(1). Petitioner argues that "[t]he failure to object to the witness[] being declared unavailable resulted in the denial of critical, exculpatory evidence which gravely prejudiced [Petitioner]." Presumably, the "exculpatory evidence" that Petitioner refers to is the police report that second counsel described in his testimony in the post-conviction hearing. Specifically, second counsel testified:

> A. Okay. There was also there was a witness, a police officer, that interviewed Mr. Wiggins at The Med the night of the incident. And he gave a different version basically saying he didn't, I'm paraphrasing what I remember, he gave a statement basically making it sound like he didn't see who did it. All right.

And where that became important is we wanted to be able to impeach Mr. Wiggins with that but because he took the Fifth we couldn't. And so I think there were discussions in here, and it may be later after they played his testimony, about whether we could ask that question. I believe Mr. Campbell objected to us bringing in another party to say what Mr. Wiggins had said. And then that's when our research came up about did he get a full preliminary hearing.

And of my recollection of it was that, that like so often happens, when a defense attorney asks questions of a witness the State immediately objects and says, your Honor, that's discovery. And basically to that effect trying to limit it just to certain things. And the problem is the attorney that's doing the cross-examination doesn't have discovery or access to those prior statements. And so then we wanted to be able to get into that. So I think we had a conversation about that as well.

Importantly for our analysis is the fact that Petitioner did not present at the post-conviction hearing the referenced statement of Mr. Wiggins, nor the testimony of the police officer who took the statement, nor any legal argument with any citation of authority to the post-conviction court as to why the preliminary hearing testimony should be excluded even if Mr. Wiggins was an "unavailable witness."

Tennessee Rule of Evidence 804(a)(2) and (b)(1) provide as follows:

**Rule 804. Hearsay exceptions; declarant unavailable.** – (a) Definition of Unavailability. – "Unavailability of a witness" includes situations in which the declarant –

. . .

(2) Persists in refusing to testify concerning the subject matter of the declarant's statement despite an order of the court to do so;

. . . .

(b) Hearsay Exceptions. – The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

(1) Former Testimony. – Testimony given as a witness at another hearing of the same or different proceeding or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered had both *an*

*opportunity* and a similar motive to develop the testimony by direct, cross, or redirect examination.

(Italicized emphasis added).

Petitioner did not specifically argue at the post-conviction hearing or on appeal that his trial counsels rendered deficient performance by failing to object to the admissibility of the preliminary hearing testimony of Mr. Wiggins even if he satisfied the criteria to be declared an "unavailable witness" under Tennessee Rule of Evidence 804(a)(2). However, even if trial counsels rendered deficient representation by failing to object to the admissibility of the preliminary hearing testimony because the General Sessions Judge *sua sponte* prohibited General Sessions counsel from pursuing a line of cross-examination, Petitioner failed to prove prejudice in order to establish ineffective assistance of counsel. Theoretically, trial counsels could have argued that the preliminary hearing testimony did not meet the criteria of Rule 804(b)(1) to be admissible because Petitioner, due to the General Sessions Judge's action, did not have "an opportunity . . . to develop the testimony by . . . cross . . . examination." Tenn. R. Evid. 804(b)(1).

The preliminary hearing transcript made an exhibit at the post-conviction hearing contains the following pertinent part:

DEFENSE: BUT DID THEY, DID YOU TALK TO THE OFFICERS ABOUT WHAT HAD HAPPENED?

WIGGINS: YEA IN THE HOSPITAL. IT WAS SOME DUDE CAME TO SEE ME I DON'T KNOW WHO HE WAS.

DEFENSE: OK AND DID YOU GIVE A [ ] DESCRIPTION TO THE PERSON THAT DID THE SHOOTING, TO THE OFFICER IN THE HOSPITAL?

WIGGINS: YEA I TRIED TO. WHAT I THOUGHT I SEEN, YEA.

DEFENSE: OK WHAT DID YOU TELL THE OFFICER?

WIGGINS: ABOUT IT WAS.

DEFENSE: AS FAR AS THE DESCRIPTION OF THE PERSON?

WIGGINS: THE RED DUDE, RICO WITH THE DREADLOCKS AND STUFF. THE LITTLE SKINNY G DUDE. LITTLE SKINNY, LITTLE SHORT DUDE, SHORT HAIR OR WHATEVER, AND RAY-RAY DARK SKIN HE WAS THE ONE SHOOTING AND SHORT HAIR (INAUDIBLE).

DEFENSE: SO YOU GAVE THE OFFICERS THE NAME OF RICO, RAY-RAY, AND SKINNY G?

WIGGINS: I JUST SAID, "THE BLACK DUDE, THE RED DUDE, AND THE BROWN DUDE" OR WHATEVER.

DEFENSE: SO YOU JUST SAID THE BLACK, THE RED DUDE, THE BROWN DUDE, AND THE BLACK DUDE?

WIGGINS: YEA.

DEFENSE: THAT WAS THE DESCRIPTION YOU GAVE THE OFFICERS?

WIGGINS: YEA.

DEFENSE: YOU DIDN'T GIVE ANY NAMES?

WIGGINS: NAW.

DEFENSE: YOU DIDN'T GIVE ANY STREET NAMES?

WIGGINS: NAW I DIDN'T GIVE ANY STREET NAMES.

DEFENSE: DID YOU GIVE ANY GANG AFFILIATION?

WIGGINS: NO GANG AFFILIATION. I THINK I GAVE THEM, YEA I THINK SO. I THINK I TOLD THEM THEY WERE G.D. AND ONE WAS ATREY HOVER.

DEFENSE:    OK AND DID YOU TELL THEM WHICH ONE THAT WAS?

WIGGINS:    YEA.

DEFENSE:    OR DID YOU KNOW?

WIGGINS:    YEA I HAD TOLD THEM.

DEFENSE:    BUT YOU DIDN'T GIVE ANY NAMES?

WIGGINS:    NAW TO THE DETECTIVE DUDE?

DEFENSE:    THAT'S WHAT I ASKED YOU.

JUDGE:      WHAT'S THE, WHAT'S THE RELEVANCE OF THIS? WE TALKING ABOUT ONE PERSON CHARGED WITH THESE CHARGES (INAUDIBLE).

DEFENSE:    WELL I'M I'M TRYING TO GET THE DESCRIPTION AND THAT'S THE ISSUE.

JUDGE:      THAT'S DISCOVERY.

DEFENSE:    OK.

JUDGE:      THAT'S DISCOVERY.

DEFENSE:    OK.

JUDGE:      YOU DO THAT UPSTAIRS THIS IS THE PRELIMINARY HEARING.

DEFENSE:    OK.

JUDGE:      I'M GOING TO ASK YOU TO MOVE ON WITH SOMETHING RELEVANT TO RAMONE LAWSON (INAUDIBLE).

DEFENSE:        OK SO YOU UM AFTER THE HOSPITAL A COUPLE OF WEEKS LATER YOU GAVE A STATEMENT OT THE OFFICERS?

WIGGINS:        YES, MA'AM.

DEFENSE:        OK AND THAT'S WHAT YOU TESTIFIED TO HERE TODAY?

WIGGINS:        YES, MA'AM.

DEFENSE:        OK THAT'S ALL I HAVE FOR MISTER WIGGINS.

STATE:        NO REDIRECT JUDGE.

There was a thorough cross-examination of Mr. Wiggins reflected in the transcript pertaining to his not giving the name of the shooter to the police while he was in the hospital. It contains inconsistencies and contradictions. At the post-conviction hearing General Sessions counsel described what she would have tried to elicit at the General Sessions hearing if she had not been stopped by the General Sessions Judge:

A. Well I was trying to determine I don't believe he knew Mr. Lawson's name. And I was trying to get a description that he may have given to the police. And from what I understand I believe he said he gave a statement a couple of weeks after, I mean his written statement a couple of weeks after, so I was trying to get a little bit of more clarity of what he actually said and how did he come to know that it was Mr. Lawson.

Q. All right.

A. If he got that information from, you know, somebody else or was that his actual knowledge.

Without the statement of Mr. Wiggins to the police officer at the hospital, we are unable to conclude that Petitioner was prejudiced by either a failure to object to Mr. Wiggins being declared unavailable under Rule 804(a)(2) or that he was prejudiced by a failure to object to admissibility of the transcript under the criteria of Rule 804(b)(1). Also, the failure to present the testimony of the officer who purportedly took the statement of Mr. Wiggins when he allegedly "gave his statement basically making it sound like he [Mr. Wiggins] didn't see who did it," further prevents this court from

- 12 -

concluding that any prejudice was suffered by Petitioner even if his trial counsels performed deficiently. We would have to use pure speculation to say that Petitioner is entitled to post-conviction relief in this case. Accordingly, Petitioner is not entitled to relief.

**CONCLUSION**

The judgment of the post-conviction court is affirmed.

_____
THOMAS T. WOODALL, JUDGE