IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 27, 2019

## SANTERIAUS D. LAVENDER v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2013-B-1428     Mark J. Fishburn, Judge**

_____

**No. M2018-02204-CCA-R3-PC**

_____

Petitioner, Santeriaus D. Lavender,[1] pled guilty to second degree murder in exchange for a sentence of thirty years to be served at 100 percent. Petitioner subsequently filed a petition for post-conviction relief, alleging that he received the ineffective assistance of counsel and that his guilty plea was not knowing and voluntary. The post-conviction court denied relief, and upon our review of the record, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and J. ROSS DYER., JJ., joined.

Ryan C. Caldwell, Nashville, Tennessee, for the appellant, Santeriaus D. Lavender.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Assistant Attorney General; Glenn Funk, District Attorney General; and Janice Norman, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

*Factual and Procedural History*

On May 21, 2013, Petitioner was indicted on four counts; one count of first-degree murder, one count of felony murder, one count of especially aggravated robbery, and one count of aggravated robbery. On December 15, 2016, Petitioner pled guilty to the

_____

[1] Throughout the record, there are three spellings of Petitioner's first name: Santeriaus, Santerious, and Santerius. We have chosen to utilize the spelling that appears in the indictment.

reduced charge of second degree murder in exchange for a sentence of thirty years to be served at a 100 percent.

The following is a summary of the factual basis for Petitioner's guilty plea: Petitioner's Co-Defendant, Bersha Edens, placed a phone call to Richard Farrar to tell him she had Xanax bars for sale. Petitioner and Co-Defendant Edens planned to rob Mr. Farrar when he arrived to purchase the Xanax. Mr. Farrar arrived at the meeting place driving a vehicle, and his friend Mr. Chad Daniel was with him. Mr. Daniel stayed in the vehicle while Mr. Farrar went to meet Co-Defendant Edens. Co-Defendant Edens handed Mr. Farrar four Xanax bars, and Mr. Farrar handed her twenty dollars. Co-Defendant Edens then called Petitioner, and Petitioner immediately entered the area, armed with a semi-automatic handgun, and robbed Mr. Farrar. Mr. Farrar ran back to his vehicle where Mr. Daniel was counting his money. As Mr. Farrar was backing up the vehicle, Petitioner approached the vehicle and demanded Mr. Daniel's money. Mr. Farrar began to drive away, and Petitioner fired multiple shots at the car, hitting Mr. Daniel in the chest. Mr. Daniel died a short time later.

At the plea hearing, Petitioner testified that he understood the petition to enter the guilty plea and that trial counsel satisfactorily answered his questions with regard to the plea. The trial court thoroughly examined Petitioner in order to ascertain that Petitioner discussed the plea with trial counsel and that Petitioner understood the plea. Petitioner responded affirmatively. The trial court asked if Petitioner had any complaints about trial counsel. Petitioner responded "no." Petitioner stated that he could read and write and that he had completed high school. Petitioner affirmed that he was not on medication, drugs, or other intoxicants, nor was he suffering from any condition that would not enable him to fully understand the proceedings. Petitioner affirmed that he understood the original charges, the possible corresponding punishments, and what the State would have to show for a jury to convict and that he had discussed the issues with his attorney.

The trial court stated, "You're pleading guilty to Second-Degree Murder in Count [One]. You're going to be sentenced to thirty years at a hundred percent under *State v. Hicks* and . . . the other count will be dismissed. Is that what your understanding, sure of what you're to plead to as well as actual punishment being imposed[?]" Petitioner responded "yeah." The trial court went on to explain that the punishment under the plea agreement was greater than the maximum sentence the trial court could impose if Petitioner were found guilty by a jury on the same charge of second degree murder. The trial court asked if Petitioner discussed this sentence in detail with trial counsel and understood everything. Petitioner responded that he understood and had no further questions about his plea or the punishment being imposed.

The trial court then explained all the rights Petitioner had as a criminal defendant and asked questions about Petitioner's understanding of each. The trial court asked

Petitioner if anyone had threatened or promised anything in order to get Petitioner to enter the plea. Petitioner responded "no." The facts of the case were then read in to the record, and the trial court asked Petitioner if the facts were true and correct. Petitioner responded in the affirmative and entered a guilty plea.

On December 15, 2017, Petitioner filed a pro se petition for post-conviction relief in which he alleged that he received the ineffective assistance of counsel. Additionally, Petitioner alleged that his guilty plea was unknowing and involuntary because of the actions of trial counsel. The post-conviction court determined that Petitioner stated a colorable claim for relief and appointed counsel. Petitioner filed an amended petition for post-conviction relief in which he alleged ineffective assistance of counsel and that his "conviction was based on a guilty plea that was involuntarily entered without his understanding the nature and consequences of the plea."

At the post-conviction hearing, Petitioner testified that trial counsel came to visit with him about four times prior to the entry of the plea. Petitioner admitted that trial counsel provided him a copy of discovery and went over the charges with him, but Petitioner did not read the whole thing. Petitioner testified that he had a twelfth-grade education and could read and write. Petitioner testified that trial counsel came to him with a plea offer of thirty years on the Friday before the trial was to begin. Petitioner stated that he did not know the sentence was to be served at 100 percent, and believed that the sentence was to be served at 30 percent because trial counsel "did not break it down to me." Petitioner claimed that he would not have pled guilty if he had known he had to serve the sentence at 100 percent.

Petitioner testified that he did not know what the term "Hicks plea" meant and that he had never been in the court system as an adult before. However, under cross-examination, he admitted that a juvenile charge had been transferred to criminal court, where he pled guilty to aggravated robbery. Petitioner stated that trial counsel told him he was facing life in prison and that Petitioner did what was "the best thing for me" by pleading guilty.

Petitioner admitted that he had three attorneys appointed to represent him on this case prior to trial counsel and that each of them had met with him, gone over his case, and told him about the State's plea offer. Petitioner admitted that he remembered the trial court explaining the charges and what the punishment for the charges could be. Petitioner admitted that trial counsel, the previous attorneys, and the trial court all explained the sentence and that Petitioner said while under oath at the plea hearing that he understood. At the post-conviction hearing, Petitioner testified that "[he] wasn't even paying attention to no hundred, period." Petitioner claimed that "[t]he only reason [he] pled guilty because [his] lawyer kept on telling [him], if [he] did go to trial, [he] would have went to – [he] would have had life." The post-conviction court showed Petitioner a

copy of his plea agreement and asked Petitioner what is written directly above Petitioner's signature. Petitioner responded "Second-Degree Murder, thirty years at a hundred percent."

Trial counsel testified that he was a criminal defense attorney with over ten years' experience and that he had defended close to thirty homicide defendants. Five of those cases had gone to a jury trial. Trial counsel testified that one of the previous attorneys had set the trial date and that one of the key witnesses had not been found. Trial counsel stated that the previous attorney hired a private investigator. Trial counsel met with the private investigator. Trial counsel testified that it would be harmful to Petitioner's case if the missing witness was located as he was an eye-witness to the shooting.

Trial counsel testified that he advised Petitioner about the charges, the possible punishments, and the evidence against Petitioner. Trial counsel believed Petitioner understood everything. Trial counsel believed that if the case went to trial, the State would likely establish the elements of felony murder and the punishment would be a life sentence. Trial counsel testified that he spoke to Petitioner about the State's offer. Trial counsel stated that the offer conveyed to him by Petitioner's previous attorney was a thirty-year sentence at 100 percent, but the State's offer had actually been thirty-three years at 100 percent. The State agreed to reduce the offer to thirty-years at 100 percent after conferring with the victim's family. Trial counsel testified that he and Petitioner never spoke about a sentence to be served at 30 percent. Trial counsel gave Petitioner real-world scenarios using the ages of various court officers as examples to show the difference between a thirty-year sentence at 100 percent and a sixty-year sentence at 100 percent. Trial counsel testified that Petitioner asked no further questions about the sentence.

Trial counsel testified that he was present when Mr. Farrar was deposed and that trial counsel had cross-examined him. Mr. Farrar was an eye-witness that identified Petitioner as the shooter during the deposition. Trial counsel spoke to Petitioner after the deposition and explained how it strengthened the State's case. Trial counsel affirmed that he spoke to Petitioner about the other witnesses for the State, including Co-Defendant Edens. Trial Counsel also testified that Petitioner entered the guilty plea after the deposition.

On cross-examination, trial counsel recalled that he filed a motion to continue the trial and believed that it had been granted, but admitted that he could not remember. Trial counsel testified that he filed the motion to give himself more time to prepare for a witness but that he could have been prepared for trial when it was originally set.

The post-conviction court denied Petitioner's request for relief and dismissed the petition. It is from the dismissal of the petition for post-conviction relief that Petitioner appeals.

*Analysis*

On appeal, Petitioner argues that he did not enter his guilty plea knowingly and understandingly. Petitioner asserts that he was unfamiliar with the term "Hicks plea." Petitioner also argues that because trial counsel did not adequately inform him about trial counsel's readiness to try his case, "he was effectively manipulated and deceived by counsel, which amounts to an improper inducement in violation of due process." On appeal, Petitioner does not challenge the post-conviction court's decision on ineffective assistance of counsel. Therefore, this issue is abandoned on appeal. *See Ronnie Jackson, Jr. v. State*, No. W2008-02280-CCA-R3-PC, 2009 WL 3430151, at *6 n.2 (Tenn. Crim. App. Oct. 26, 2009) (holding that claims raised in the trial court but not raised in the appellate brief are deemed abandoned), *perm. app. denied* (Tenn. Apr. 16, 2010). The State argues that the post-conviction court properly denied relief.

*I. Standard of Review*

Post-conviction relief is available for any conviction or sentence that is "void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. In order to prevail in a claim for post-conviction relief, a petitioner must prove his factual allegations by clear and convincing evidence. T.C.A. § 40-30-110(f); *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998). On appeal, a post-conviction court's findings of fact are conclusive unless the evidence preponderates otherwise. *Vaughn v. State*, 202 S.W.3d 106, 115 (Tenn. 2006). Accordingly, questions concerning witness credibility, the weight and value to be given to testimony, and the factual issues raised by the evidence are to be resolved by the post-conviction court, and an appellate court may not substitute its own inferences for those drawn by the post-conviction court. *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001). However, the post-conviction court's conclusions of law and application of the law to the facts are reviewed under a purely de novo standard, with no presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001).

*II. Guilty Plea*

To satisfy constitutional standards of due process, a guilty plea must be entered knowingly, intelligently, and voluntarily. *Boykin v. Alabama*, 395 U.S. 238, 243 (1969).

When evaluating the knowing and voluntary nature of a guilty plea, the United States Supreme Court has held that "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). In making this determination, the reviewing court must look to the totality of the circumstances. *See State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995); *Chamberlain v. State*, 815 S.W.2d 534, 542 (Tenn. Crim. App. 1990). This Court may consider the following circumstantial factors:

> the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from trial.

*Blankenship v. State*, 858 S.W.2d 897, 905 (Tenn. 1993). "[A] plea is not 'voluntary' if it results from ignorance, misunderstanding, coercion, inducements, or threats." *Ward v. State*, 315 S.W.3d 461, 465 (Tenn. 2010). "Before a Tennessee court can accept any guilty plea, the court must determine that the defendant is pleading guilty voluntarily and with an understanding of the nature of the plea and its consequences" and that there is an adequate factual basis for the plea. *Hicks*, 983 S.W.2d 240 at 247. A defendant's solemn declaration in open court that his plea is knowing and voluntary creates "a formidable barrier in any subsequent collateral proceeding" because these declarations "carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

With regard to Petitioner's complaint that he did not understand the term "Hicks plea," we note that the term "under *State v. Hicks*" was used by the trial court and was written on the petition to enter a guilty plea. However, it is not clear whether that was a reference to this Court's opinion in *Hicks v. State*, 983 S.W.2d 240 (Tenn. Crim. App. 1998) (holding that a defendant may knowingly and voluntarily enter a "best interests" plea while maintaining his innocence) or the Tennessee Supreme Court's opinion in *Hicks v. State*, 945 S.W.2d 706 (Tenn. 1997) (holding that a knowing and voluntary plea waives any irregularity with regard to offender classification and release eligibility). It appears that the latter case would be more relevant given that Petitioner pled guilty to second degree murder and agreed to a sentence of thirty years, which is longer than the trial court could have sentenced him if he had been found guilty of second degree murder by a jury and sentenced as a Range I offender. Our supreme court has stated that an out-of-range sentence is valid when imposed as a result of a plea bargain agreement and when entered into voluntarily and knowingly. *Hicks*, 945 S.W.2d at 709. Moreover, as this Court held in our *Hicks* opinion, "[i]f the petitioner had the information required to make an intelligent decision and if he understood the consequences of pleading guilty to .

. . second-degree murder, then he entered his plea knowingly and intelligently despite his lack of specific knowledge of" a specific case or legal term. *Hicks*, 983 S.W.2d at 248. Accordingly, the term "Hicks plea" itself is irrelevant so long as Petitioner understood the consequences of his plea.

Petitioner failed to cite any *Hicks* case in his brief and does not make any argument as to why or how Petitioner's understanding of "Hicks plea," a legal term, is important to determine whether Petitioner's plea was entered involuntary and unknowingly. In failing to do so, Petitioner has risked waiver of this issue. *See* Tenn. R. Ct. Crim. App. 10(b); *State v. Bonds*, 502 S.W.3d 118, 144 (Tenn. Crim. App. 2016). "It is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived." *Sneed v. Bd. Of Prof'l Responsibility of Sup. Ct.*, 301 S.W.3d 603, 615 (Tenn. 2016). Notwithstanding procedural waiver of this issue for noncompliance with the Rules of this Court, we elect to address the issue on its merits.

Based on the proof presented at the post-conviction hearing, the post-conviction court found that Petitioner did not demonstrate that he entered his plea unknowingly or involuntarily. Petitioner had a twelfth-grade education and can read and write. Petitioner was admittedly familiar with the criminal justice system, having pled guilty in the past. The post-conviction court found that trial counsel was competent, spent time with Petitioner explaining the available options, and explained in real-world terms when Petitioner would be released from incarceration given the possible punishments. The terms of the plea were set forth in writing, thoroughly explained to Petitioner by trial counsel, and explained again by the trial court during the plea colloquy. Petitioner testified that he had been given the discovery, had discussions with trial counsel, and understood everything. The post-conviction found that Petitioner was not threatened or induced to plead guilty. Further, the post-conviction court found Petitioner's choice to enter the guilty plea "entirely rational considering the prison time he was risking if he went to trial." The record does not preponderate against the findings of the post-conviction court. Thus, we agree with the post-conviction court's conclusion that Petitioner failed to prove that his guilty plea was not knowingly and voluntarily entered.

*Conclusion*

Based on the foregoing, we affirm the judgment of the post-conviction court denying relief.

_____
TIMOTHY L. EASTER, JUDGE