IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 12, 2019

## GIOVANNE TREYMANE JOHNSON a.k.a. GIOVOANNE TREYMANE JOHNSON v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Montgomery County**
**No. 41300837      Jill Bartee Ayers, Judge**

_____

### No. M2018-00755-CCA-R3-PC

_____

Petitioner, Giovoanne Treymane Johnson, appeals the denial of his post-conviction petition, arguing that the post-conviction court erred in finding that he received the effective assistance of counsel at trial.  More specifically, he argues that trial counsel rendered deficient performance by failing to file a motion to sever his trial from that of his co-defendant and for failing to challenge the admission of his co-defendant's inculpatory statement.  Having reviewed the record and the briefs of the parties, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and TIMOTHY L. EASTER, JJ., joined.

Wayne Clemons, Clarksville, Tennessee, for the appellant, Giovoanne Treymane Johnson.

Herbert H. Slatery III, Attorney General and Reporter; Ruth Anne Thompson, Senior Assistant Attorney General; John Wesley Carney, Jr., District Attorney General; and Robert Nash, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

*Background*

The testimony at trial as set forth by this court on direct appeal which is relevant herein is as follows:

In a joint trial, Defendants Giovoanne Treymane Johnson and Rakeem Rashan Jones were convicted of first degree felony murder, second degree murder, and especially aggravated robbery. As to each, the trial court merged the second degree murder conviction into the felony murder conviction and imposed a sentence of life imprisonment. As to the convictions for especially aggravated robbery, each defendant was sentenced to twenty-five years, with the sentences to be served consecutively to the sentence for the felony murder conviction. On appeal, Defendant Jones argues that (1) the trial court erred in denying his motion to sever the defendants for trial; (2) the evidence is insufficient to sustain the convictions; (3) the trial court erred both in the length and manner of service of the sentences; and (4) the court erred in denying his motion for mistrial. Defendant Johnson argues on appeal that the evidence is insufficient to sustain the convictions and that the trial court erred in ordering that the sentences be served consecutively. Following our review, we affirm the judgments of the trial court.

The defendants' convictions resulted from their robbing and shooting to death Taylor Hotzoglou, an E-4 Specialist in the United States Army stationed in Ft. Campbell, Kentucky, after he had offered them assistance.

Steven Butterman testified that on April 28, 2012, he was an E-4 Specialist with the United States Army and stationed at Ft. Campbell, Kentucky, and shared an apartment in Clarksville with the victim. At approximately 10:30 p.m. that evening, the two were in their apartment, when two men, whom they did not know, knocked on their door and asked to use their telephone. Mr. Butterman identified the defendants as the men who came to the door. He said the specific request was made by Defendant Johnson, who was given a cell phone by the victim and, apparently, dialed some numbers, although a call was not completed. After Defendant Johnson told the victim that they wanted to go to a Mini Mart store, the victim offered to drive them there. The victim returned inside the apartment to retrieve his keys, and Mr. Butterworth followed him because he was suspicious of the defendants. For protection, he gave the victim a Walther PPK .380 pistol, a weapon which he identified at trial. He watched as the victim and the defendants got into the victim's vehicle, with the victim driving, Defendant Johnson in the front passenger seat and Defendant Jones in the backseat. About forty-five minutes later, Mr. Butterman telephoned the victim's cell phone but received no answer. Detective Ulrey knocked on their apartment door at around 3:00 a.m., and Mr. Butterman provided him with the original box

for the Walther pistol, as well as the purchase receipt, both of which had the serial number for the weapon.

\*     \*     \*

Officer Joel Gibbons testified that he had been employed by the Clarksville Police Department for a little over fifteen years. He arrived at the victim's vehicle at 12:37 a.m. and observed that it was parked partly in the roadway and partly on the adjacent grassy area, the driver's side door was open, and the hazard lights were illuminated. The front passenger door was closed, and all of the windows were rolled up. The victim was in the driver's seat, slumped over the middle console, with his left leg hanging out and his face downward in the passenger seat.

\*     \*     \*

Detective Tim Anderson testified that he was a death and homicide investigator with the Clarksville Police Department and, on May 3, 2012, had been directed to maintain a search warrant log for a residence in Clarksville being searched that day. He said that, during execution of the search warrant at 438 Victory Road, officers recovered a Keltech pistol, Model P3AT .380, serial number JFU83, and the clip for the weapon. The pistol was found underneath a couch cushion in the living room. At the location, officers also recovered a towel with a red brown stain and a Tennessee identification card in Defendant Johnson's name. Officers further recovered a black rag used to cover hair and a Motorola Model XT912 cell phone with charger. Officers also used a swab to take a DNA sample from Defendant Johnson.

\*     \*     \*

David Hoover testified that he was employed by the Tennessee Bureau of Investigation ("TBI") and assigned to the Latent Fingerprint Unit of the Nashville Crime Laboratory. He said that he had received from Investigator Ulrey of the Clarksville Police Department a package containing a known fingerprint impression of Defendant Johnson. He compared the prints with two latent prints on the window removed from the victim's vehicle and determined that they were the prints of Defendant Johnson.

\*     \*     \*

- 3 -

Steve Scott testified that he was employed by the TBI Crime Laboratory in Nashville in the Firearms Identification Unit. He examined the Walther pistol, which was an exhibit in the case, and determined that it was operable. Mr. Scott said that all of the cartridge casings and four bullets removed from the victim's body were from the Keltech pistol and none from the Walther.

Cody Driver testified that he was acquainted with the defendants, both of whom he identified in the courtroom. He was with both men the evening of April 28, 2012, at his residence at 205 Mitchell Street in Clarksville. Around 10:00 p.m., the three went to the residence of Defendant Johnson, where he was "talking about hitting a lick, as in robbing somebody . . . [b]ecause he needed some more money in his pocket." Defendant Jones responded that "he was down with it." Defendant Johnson then dressed all in black, with a black hoodie, do-rag, pants, and shoes. Defendant Jones put on a black shirt. Defendant Johnson got a gun out of the dresser, and the defendants left together on foot at approximately 11:00 p.m. and returned around midnight. Defendant Jones told Driver "he had shot somebody." Defendant Jones had blood on him and used a towel to wipe it off.

*State v. Rakeen Rashan Jones and Giovoanne Treymane Johnson*, No. M2015-00515-CCA-R3-CD, 2016 WL 1558839, at *1-4 (Tenn. Crim. App. Apr. 15, 2016).

*Post Conviction Hearing*

At the beginning of the post-conviction hearing, post-conviction counsel announced that there would be no witnesses for Petitioner and rested the case "entirely on the record, the file, the transcripts[.]" Post-conviction counsel also made the following argument to the post-conviction court:

In this case, is my understanding, that the - - my client was found guilty, and the proof seemed to suggest that the Codefendant Mr. Jones shot a man. And later on, according to the testimony of Mr. Driver, the Codefendant Mr. Jones admitted to shooting that man. He said he shot somebody. That statement was introduced in trial, and they were both tried at the same time and my client was found to be guilty of this murder. And it is clear that both, by the State's arguments, that the theory well, my client was criminal [sic] responsibility. And also from the jury's question, they asked - - the[ ] jury submitted a written question that appears in the record, that asks specifically is criminal responsibility applicable to first degree premeditated murder? So this - - clearly - - clearly the jury was - - had had that in mind.

This presents a problem in that it is a violation of the confrontation clause both of the United States [C]onstitution and the Tennessee [C]onstitution, which both guarantee a right to confront and cross-examine witnesses against you. In this case the State was able to use a statement which ordinarily wouldn't have been able to be introduced into a trial if the trials had been severed. It would have been hearsay.

The only way the State could have introduced the statement that Mr. Jones's admission that he had shot someone is by bringing Mr. Jones to the stand and having him testify, and then giving [trial counsel], my client's attorney at the time, the opportunity to cross-examine that witness and ask him about his testimony. The - - that wasn't done.

As noted in the - - by the Court of Criminal Appeals that issue was raised on appeal, but they found that it has been waived because it had not been objected to a[t] trial or addressed in a pretrial motion to sever. There was a different motion to sever by [counsel for Co-defendant] which addressed some reasons for severing the trial but not that testimony, not that - - and so the Court of [Criminal] Appeals said you can't raise it now on appeal; you missed your shot to preserve it.

Well, that right there is a pretty clear case of, you know, ineffective assistance of counsel - - that's what we've alleged in our petition – the failure to, either, one, sever the trials on the basis that that testimony was going to be brought in or, two, to object when the State tried to introduce it on the grounds that it was in violation of his constitutional right.

**State's Proof**

Trial counsel testified that he has practiced law since 2004, and ninety-nine percent of his practice is criminal defense work. He previously worked as an Assistant District Attorney for five to six years, and he prosecuted more than one homicide case. Trial counsel testified that he recalled Cody Driver testifying at Petitioner's trial concerning some statements that Petitioner and Co-defendant Jones made in his presence. He recalled Mr. Driver testifying that either Co-defendant Jones or Petitioner or both had a gun and that Co-defendant Jones said that he was going to "go hit a lick." Mr. Driver also testified that Petitioner said that he was "down for" hitting a lick. Both Petitioner and Co-defendant Jones were dressed in black clothing. Mr. Driver testified that the two men left and then came back. Co-defendant Jones then said, "I shot somebody."

Trial counsel testified that the gun used to kill the victim was later found in Petitioner's house along with the victim's DNA. Trial counsel recalled that the victim's

roommate, Mr. Butterman, identified Petitioner and Co-defendant Jones. Trial counsel testified that "[Mr. Butterman] [s]aid [Petitioner] was doing most of the talking; Mr. Jones seemed a little bit more scary, he was kinda in the background, just wouldn't make eye contact with him; that [Petitioner] was wanting to get a ride home; didn't see any handguns. And testified that [Petitioner] got into the front passenger's seat and [Co-defendant] Jones got in the rear passenger compartment of the vehicle when they left." At some point it was discovered that Co-defendant Jones had Mr. Butterman's Walther PPK handgun in his possession. Mr. Butterman had given the weapon to the victim before the victim took Petitioner and Co-defendant Jones for a ride.

Concerning Petitioner's defense, trial counsel testified:

And we had explored reunion - - renunciation defense, however - - or abandonment defense that [Petitioner] had abandoned the plan, and there was some - - I think there was some formulation of that at trial, but it still didn't meet all of the elements of an actual abandoning the defense. Not enough to get the instruction, because he never said - - there's no testimony from anybody that he ever said hey, I'm changing my mind, I'm backing out, I'm going home.

Trial counsel also said that the abandonment defense would have required Petitioner to testify at trial. When asked why he felt that Co-defendant Jones' statement that he shot someone was important for the defense, trial counsel testified:

Well, obviously, we wanted to make Mr. Jones the bad guy in this and get the jury to focus on him and not [Petitioner]. We - - he - - in our mind he was the worst of the bad criminal actor. He's the one that pulled the trigger and executed this individual, and so we wanted to point that out to the jury, wanted the jury to hear from Cody Driver that hey, you know, this guy came back and said he killed somebody.

Trial counsel testified that Co-defendant Jones' statement was "all we had." Trial counsel testified that it was his strategy to allow the statement into evidence.

Trial counsel agreed that Petitioner's fingerprint was found on the passenger window of the victim's car. He testified:

And of course, the testimony from Mr. Butterman was that [Petitioner] got in the front seat, Jones got in the back; the thumbprint corroborated that. And then we used the medical examiner, and the photographs that show the angle of the shot, trajectory of [the victim's] teeth and other body parts that were blown out of his face when he got struck with this

- 6 -

to - - to try to show that it was Jones that did this, that then dovetails in with Cody Driver's statement.

Trial counsel agreed that the medical examiner testified that "even with the probes, that it could have [come] from either the passenger seat or the rear," depending on which way the victim's body was turned. Trial counsel testified that it was his strategy to use as much evidence as he could to show that Co-defendant Jones shot the victim. He agreed that they did not put on proof of "renunciation" because "we wouldn't develop that without running the risks of other statements and things like that coming in."

*Analysis*

Petitioner argues that trial counsel rendered deficient performance by not filing a motion to sever his case from that of his Co-defendant Rakeen Jones on the basis of Co-defendant Jones' statement that "he had shot somebody," which was admitted at trial. Co-defendant Jones did not testify at trial. Petitioner asserts that Co-defendant Jones' statement equally incriminated Petitioner at trial and that the prosecutor "repeatedly called attention to and relied on the doctrine of criminal responsibility and felony murder, saying in closing that 'both defendants are responsible for the death regardless of who actually committed the killing and whether the killing was specifically contemplated by the other.'" Petitioner also contends that trial counsel failed to challenge the admissibility of Co-defendant Jones' statement at trial.

Post-conviction relief is only warranted when a petitioner establishes that his or her conviction or sentence is void or voidable because of an abridgment of a constitutional right. T.C.A. § 40-30-103. The Tennessee Supreme Court has held:

> A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

*Vaughn v. State*, 202 S.W.3d 106, 115 (Tenn. 2006) (internal citations and quotation marks omitted), *abrogated on other grounds by Brown v. Jordan*, 563 S.W.3d 196, 202 (Tenn. 2018); *see Felts v. State*, 354 S.W.3d 266, 276 (Tenn. 2011); *Frazier v. State*, 303 S.W.3d 674, 679 (Tenn. 2010). A post-conviction petitioner has the burden of proving the factual allegations by clear and convincing evidence. T.C.A. § 40-30-110(f); Tenn. Sup. Ct. R. 28, § 8(D)(1); *Dellinger v. State*, 279 S.W.3d 282, 293-94 (Tenn. 2009). Evidence is considered clear and convincing when there is no serious or substantial doubt

about the accuracy of the conclusions drawn from it. *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010); *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009); *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. *Vaughn*, 202 S.W.3d at 116 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 697).

A petitioner successfully demonstrates deficient performance when the clear and convincing evidence proves that his attorney's conduct fell "below an objective standard of reasonableness under prevailing professional norms." *Id.* at 369 (citing *Strickland*, 466 U.S. at 688; *Baxter*, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.* at 370 (quoting *Strickland*, 466 U.S. at 694).

We note that "[i]n evaluating an attorney's performance, a reviewing court must be highly deferential and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *State v. Burns*, 6 S.W.3d 453, 462 (Tenn. 1999) (citing *Strickland*, 466 U.S. at 689). Moreover, "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." *Strickland*, 466 U.S. at 688-89. However, we note that this "'deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation.'" *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (quoting *Goad*, 938 S.W.2d at 369).

The post-conviction court in this case made the following findings:

> Petitioner complains that trial counsel failed to file a motion to sever, on the basis of an admission of defendant Jones' inculpatory statement made to Cody Driver that "he had shot somebody." Such statement was admitted at trial. Defendant Jones did not testify at trial. Petitioner argues that the introduced statement incriminated Petitioner under the doctrine of criminal responsibility and felony murder, and because Jones did not testify, he was denied the right to cross examine him regarding

- 8 -

the statement. Petitioner's trial counsel did not move for a separate trial or challenge the admissibility of co-defendant Jones' statement.

Petitioner further argues that trial counsel's failure to move for a severance resulted in clear prejudice to [P]etitioner rising to the level of ineffective assistance of counsel.

[Trial counsel] testified that he did not object to the statement of Cody Driver as he thought the statement helped his client by identifying defendant Jones as the shooter. In his professional opinion, that was the best defense strategy for [ ] [P]etitioner as it was consistent with the medical examiner's testimony and testimony of other witnesses.

Defendant Jones' counsel did move to sever the defendants at trial based on statements [P]etitioner made while in custody to Investigator Ulrey implicating Jones, and such motion was denied. Thus the Court concludes that counsel did not render ineffective assistance as to these issues. No evidence was presented to support the claim that [trial counsel's] performance was deficient. [ ] Petitioner has failed to establish that he received the ineffective assistance of counsel in this case.

The Court has also reviewed those claims which [ ] [P]etitioner raised in his petition but did not address at the evidentiary hearing. All claims not specifically addressed in this order, after full consideration by the Court, have been concluded to be without merit. Petitioner's failure to address these claims at the evidentiary hearing leads this Court to conclude that [P]etitioner has failed to establish those claims by clear and convincing evidence. The Court's declining to address such claims in writing does not reflect a failure by the Court to review those claims, but rather reflects an effort by the Court to be judicially efficient.

[ ][P]etitioner's claims that trial counsel's cumulative errors were "both objectively unreasonable and led to the prejudice of [P]etitioner's defense" rising to the level of deficient performance by trial counsel. However, as the Court has found that none of [P]etitioner's previously-listed claims entitle him to relief, the Court also finds that [ ] [P]etitioner is not entitled to relief based upon cumulative error.

The record supports the post-conviction court's findings. Petitioner did not present any proof of his allegations at the post-conviction hearing and rested his case "entirely on the record, the file, the transcripts[.]" Therefore, Petitioner has not proven

his claims by clear and convincing evidence.  Concerning the issue of severance in a post-conviction proceeding, this court has held:

> "The decision to sever criminal defendants is wholly within the discretion of the trial court and cannot be interfered with absent clear abuse." *State v. Mickens*, 123 S.W.3d 355, 383 (Tenn. Crim. App. 2003) (internal quotations and citations omitted).  "Mutually antagonistic" defenses and attempts by each codefendant to "cast blame on the other" do not alone justify severance. *State v. Ensley*, 956 S.W.2d 502, 509 (Tenn. Crim. App. 1996).  "Where a motion for severance has been denied, the test to be applied in determining whether the trial court abused its discretion is whether the defendant was 'clearly prejudiced' in his defense as a result of being tried with his codefendant." *State v. Price*, 46 S.W.3d 785, 803 (Tenn. Crim. App. 2000).  On direct appeal, this Court determined that "[a] review of the evidence against each defendant makes clear that neither was prejudiced by the fact they were tried together." *See Antonio Jackson and Joletta Summers*, 2014 WL 6200805, at *7.  Specifically, this Court held that even if Petitioner's severance issue were not waived, "it would be without merit given the abundant proof which the State could have presented in a separate trial against [Petitioner]." *Id.*

*Joletta Summers v. State*, No. W2016-02157-CCA-R3-PC, 2017 WL 2998787, at *8-9 (Tenn. Crim. App. July 14, 2017).

Petitioner did not submit any evidence at the post-conviction hearing to show that a severance motion would have been granted. Petitioner has not shown any prejudice by the fact that he and Co-defendant Jones were tried together.  A petitioner in a post-conviction proceeding bears the burden of proving factual allegations (in this case, that a motion for severance of offenses would have been meritorious if filed by trial counsel) by clear and convincing evidence.  Tenn. Code Ann. § 40-30-110(f).  Petitioner's proof at the post-conviction hearing fell far short of the "clear and convincing" standard. *Robert Donterious Conner v. State*, No. M2011-00254-CCA-R3-PC, 2012 WL 12932510, at *2 (Tenn. Crim. App. July 12, 2012).

As for Petitioner's claim that trial counsel's performance was deficient for failing to challenge the admission of Co-defendant Jones statement that he "shot somebody," Petitioner has not shown that trial counsel rendered deficient performance.  Trial counsel testified that he made a strategic decision to allow Co-defendant Jones' statement into evidence.  When asked why he felt that Co-defendant Jones' statement that he shot someone was important for the defense, trial counsel testified:

Well, obviously, we wanted to make Mr. Jones the bad guy in this and get the jury to focus on him and not [Petitioner]. We - - he - - in our mind he was the worst of the bad criminal actor. He's the one that pulled the trigger and executed this individual, and so we wanted to point that out to the jury, wanted the jury to hear from Cody Driver that hey, you know, this guy came back and said he killed somebody.

Trial counsel testified that Co-defendant Jones' statement was "all we had." Trial counsel noted that they had explored a renunciation or abandonment defense, that Petitioner had abandoned the plan, "and there was some - - I think there was some formulation of that at trial, but it still didn't meet all of the elements of an actual abandoning the defense. Not enough to get the instruction, because [Petitioner] never said - - there's no testimony from anybody that he ever said hey, I'm changing my mind, I'm backing out, I'm going home." Trial counsel agreed that an abandonment defense would have required Petitioner to testify at trial, and Petitioner chose not to testify. We find that trial counsel's decision to not object to Co-defendant Jones' statement that he shot someone qualifies as a reasonable strategic decision. The fact that a particular strategy or tactical decision failed does not by itself establish deficiency. *Goad*, 983 S.W.2d at 370. Petitioner is not entitled to relief on this issue.

## CONCLUSION

Based on the foregoing, we affirm the judgment of the post-conviction court.

_____
THOMAS T. WOODALL, JUDGE

- 11 -