IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 17, 2019

## MONTEZ DEONTAY RIDLEY v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2014-A-258      Cheryl A. Blackburn, Judge**

_____

### No. M2018-01773-CCA-R3-PC
_____

The Petitioner, Montez Deontay Ridley, was convicted by Davidson County jury of aggravated robbery and received a sentence of nine years' imprisonment.[1]   State v. Montez Deontay Ridley, No. M2015-01607-CCA-R3-CD, 2017 WL 359091, at *1 (Tenn. Crim. App. Jan. 24, 2017)(no perm. app filed).  He appeals from the denial of his petition for post-conviction relief, alleging ineffective assistance of trial counsel based on the failure to cross-examine the victim concerning his inconsistent description of the gun used in the robbery.  Upon our review, we affirm the judgment of the post-conviction court.

 **Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and D. KELLY THOMAS, JR., J., joined.

Ryan C. Caldwell, Nashville, Tennessee, for the Petitioner, Montez Deontay Ridley.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Assistant Attorney General, Glenn Funk, District Attorney General; and Megan King, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

        In August 2013, the Petitioner, along with his cohort, shoved a gun into the side of the victim and robbed him of several pairs of Air Jordan athletic shoes.  The Petitioner eventually provided a statement to police admitting his involvement in the robbery; however, he claimed that the shoes were given to him in exchange for drugs, that the victim was angry because the Petitioner sold him fake drugs, and that he was not the

_____

        [1] This sentence was ordered to be served consecutively to another, unrelated matter as reflected in the judgment form.

individual who held the gun on the victim. At trial, the victim testified that he had placed an advertisement on Craigslist for the sale of athletic shoes and communicated by phone with a buyer, later identified as the Petitioner, to purchase the shoes. On the day of the exchange, the victim, accompanied by his cousin, arranged to meet the Petitioner at a restaurant in Nashville at one o'clock in the afternoon. The Petitioner did not come to the prearranged location, but he called later that night and arranged to meet the victim at an alley behind a retail store. When the victim arrived, the Petitioner and another man approached the victim's car.

The victim got out of his car and his cousin remained in the front passenger seat. The victim walked to the back of his car to show the Petitioner the shoes, and they talked for a few seconds about the shoes. The Petitioner then pulled a gun out of his pocket and pointed it at the victim's side. As the Petitioner held the gun on the victim, another man searched the victim's pockets and took his wallet. The two men also took four pairs of shoes from the trunk of the Petitioner's car. The victim denied that he bought drugs from or sold drugs to the Petitioner. The victim called the police and described the robbers as follows:

> Two men, African American, ... both of them were close to 6'3" or 6'4" one guy had dreads, the other guy had short hair. . . . I described the clothes, what kind of shirts they had on. . . . [T]he one that stuck the gun into my side had gold teeth, he had gold fronts.

Although the victim was unable to identify the Petitioner from a photographic array, he positively identified the Petitioner in the courtroom as the person who robbed him. The victim also recognized the Petitioner's voice from their telephone conversations regarding the shoes. The victim gave the police the telephone number he used to communicate with the Petitioner, which was traced to Brittany Lee Hunter, the mother of the Petitioner's child. Hunter testified that the Petitioner was using her phone at the time of the robbery and that they lived together in a housing development near the location of the robbery. The Petitioner's cousin also testified consistently with the testimony of the victim. She also observed the Petitioner "point what appeared to be a silver gun at [the victim's] side."

The Petitioner provided a statement to law enforcement, which was video recorded and played for the jury at trial. The Petitioner initially denied knowing anything about the robbery and denied any involvement in the crime. However, he eventually maintained that he had set up a transaction with the victim to exchange "fake drugs made up of baking soda" for the shoes. There was no evidence discovered by law enforcement that the victim was buying or selling drugs. As the Petitioner continued to deny

- 2 -

involvement in the crime, the interviewing detective suggested that perhaps the victim accused the Petitioner of robbery because the victim was unsatisfied with a drug deal. The Petitioner eventually acknowledged that he needed new shoes and that he found someone willing to exchange shoes for cocaine. When the Petitioner met with the victim, he gave the victim some baking soda that was "rocked up" to resemble cocaine. The Petitioner admitted that he took possession of two pairs of new shoes, but he denied that a gun was involved. Neither the shoes taken during the robbery or the gun used in the robbery were found. State v. Montez Deontay Ridley, No. M2015-01607-CCA-R3-CD, 2017 WL 359091, at *1-4 (Tenn. Crim. App. Jan. 24, 2017).

On September 18, 2017, the Petitioner filed a pro se petition for post-conviction relief. Following the appointment of counsel, on May 17, 2018, an amended petition for post-conviction relief was filed, alleging, inter alia, that trial counsel was ineffective in failing to adequately cross-examine the victim concerning inconsistencies in his description of the gun used in the robbery.[2] At the July 11, 2018 post-conviction hearing, the Petitioner testified, in relevant part, that there was no gun involved in the robbery of the victim. The Petitioner admitted that he "played a part of meeting up with [the victim], but when it come to a weapon, [he] don't know nothing about that." In support of his claim, the Petitioner pointed out that in the victim's statement to the police the victim said that the Petitioner "placed a silver gun to his back, but in the preliminary hearing [the victim] can't describe the color or nothing." The Petitioner was aggrieved because he advised trial counsel of this discrepancy and trial counsel failed to "bring it up." The Petitioner believed that the charges should have been reduced to simple robbery or theft of property based upon the victim's inability to identify the gun used in the robbery and the contradictory statements provided by the victim.

In regard to this issue, trial counsel testified that he believed the case "was going to come down to the credibility of the victim." As part of his defense strategy, trial counsel attempted to cross-examine the victim, a college basketball coach, concerning two NCAA rule infractions, where the victim was alleged to have taken money from boosters. Although the trial court limited trial counsel's line of questioning, trial counsel was able to question the victim in part about these infractions. Trial counsel acknowledged that he noticed the discrepancy in the victim's statement between "a silver gun versus a black gun" prior to trial, and he admitted that the victim gave "two kind of separate descriptions" of the gun. However, trial counsel said that the victim maintained that there was a gun involved in the robbery. Accordingly, trial counsel did not focus on the discrepancy and explained his reasoning as follows:

---

[2] The Petitioner raised several other issues in his petition for post-conviction relief and at the post-conviction hearing. As these claims are not addressed in his brief before this court, they are deemed waived.

My fear being that, you know, it would kind of come down to was the car red or the car blue. You know, and then the state could very simply say well, it doesn't matter, I just remember them shooting at me. You know, and so that was a detail that yes, I could've pointed out, but I felt really could have taken away from our defense in that it would've set up a response that I would not have had an answer to. I did not think it was relevant.

Trial counsel also testified that he was focused on discrediting the victim based on (1) the victim's failure to identify the Petitioner in the photographic array and (2) the victim's voice identification of the Petitioner based solely on the phone calls that were made to arrange the sale of the shoes.

By written order on August 28, 2018, the post-conviction court denied relief, providing, in relevant part, as follows:

> Trial counsel testified . . . and the Court credits his testimony. [Trial counsel] stated he was aware the victim initially described the gun as silver but then testified it was black; however, [trial counsel] did not believe it advantageous to focus on the color of the weapon when the defense's position is no weapon was involved in the crime. He stated cross-examining the victim about the gun would have emphasized the issues about a weapon. Instead, [trial counsel] testified he attempted to challenge the victim's credibility by (1) emphasizing he could not make a positive identification when shown a photographic line up and (2) introducing bad acts. [footnote omitted].

The Petitioner filed a timely notice of appeal, and this case is now properly before this court for review.

## ANALYSIS

In this appeal, the Petitioner's sole contention is that trial counsel was deficient in failing "to adequately subject the State's case to adversarial testing." He specifically argues that the jury would have acquitted him of aggravated robbery had trial counsel questioned the victim regarding his contradictory statements concerning the color of the gun. In response, the State contends that the evidence does not preponderate against the findings of the post-conviction court accrediting the testimony of trial counsel. Upon our review, we agree with the State.

- 4 -

In resolving this issue, we rely on the following well established legal rubric for claims of post-conviction relief. Post-conviction relief is only warranted when a petitioner establishes that his or her conviction or sentence is void or voidable because of an abridgement of a constitutional right. Tenn. Code Ann. § 40-30-103. The Tennessee Supreme Court has held:

> A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal citations and quotation marks omitted); see Felts v. State, 354 S.W.3d 266, 276 (Tenn. 2011); Frazier v. State, 303 S.W.3d 674, 679 (Tenn. 2010). A post-conviction petitioner has the burden of proving the factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); Tenn. Sup. Ct. R. 28, § 8(D)(1); Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Lane v. State, 316 S.W.3d 555, 562 (Tenn. 2010); Grindstaff v. State, 297 S.W.3d 208, 216 (Tenn. 2009); Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

Vaughn further repeated well-settled principles applicable to claims of ineffective assistance of counsel:

> The right of a person accused of a crime to representation by counsel is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. Both the United States Supreme Court and this Court have recognized that this right to representation encompasses the right to reasonably effective assistance, that is, within the range of competence demanded of attorneys in criminal cases.

Vaughn, 202 S.W.3d at 116 (internal quotations and citations omitted).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Id. (citing Strickland v. Washington, 466 U.S. 668, 687 (1984); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). "[A] failure to prove

either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." <u>Goad v. State</u>, 938 S.W.2d 363, 370 (Tenn. 1996) (citing <u>Strickland</u>, 466 U.S. at 697). A petitioner successfully demonstrates deficient performance when the clear and convincing evidence proves that his attorney's conduct fell below "an objective standard of reasonableness under prevailing professional norms." <u>Id.</u> at 369 (citing <u>Strickland</u>, 466 U.S. at 688; <u>Baxter</u>, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" <u>Id.</u> at 370 (quoting <u>Strickland</u>, 466 U.S. at 694).

This Court has previously noted that "cross-examination is a strategic and tactical decision of trial counsel, which is not to be measured by hindsight." <u>Gregory G. Kilgore v. State</u>, No. M2012-01296-CCA-R3-PC, 2013 WL 3326663, at *7 (Tenn. Crim. App. June 27, 2013) (citing <u>State v. Kerley</u>, 820 S.W.2d 753, 756 (Tenn. Crim. App. 1991)). "Allegations of ineffective assistance of counsel relating to matters of trial strategy or tactics do not provide a basis for post-conviction relief." <u>Taylor v. State</u>, 814 S.W.2d 374, 378 (Tenn. Crim. App.1991). Counsel has some discretion in conducting the defense and is entitled to use his best judgment in matters of trial strategy or tactics. <u>See McBee v. State</u>, 655 S.W.2d 191, 193 (Tenn. Crim. App. 1983).

Applying the above law to this case, we conclude that the post-conviction court properly denied relief. The record shows that trial counsel was aware of the victim's different descriptions of the gun prior to trial. Trial counsel agreed with the Petitioner that the victim described the gun as silver in his first statement to police and in a later statement the victim described the gun as black. However, trial counsel emphasized that the victim never said that there was *not* a gun involved in the robbery; therefore, the color of the gun was not relevant. Moreover, trial counsel believed that the better strategy was to focus on impeaching the victim based on the victim's prior bad acts involving NCAA rule infractions, the victim's failure to identify the Petitioner in a photographic array, and the victim's tenuous voice identification of the Petitioner. The post-conviction court accredited the testimony of trial counsel, and the record supports this determination. Accordingly, the Petitioner has failed to establish deficient performance or prejudice, and he is not entitled to relief.

## CONCLUSION

The judgment of the post-conviction court is affirmed.

- 6 -

_____
CAMILLE R. MCMULLEN, JUDGE