IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs December 3, 2019

**JOHNNY WILKERSON v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**No. 14-03148       W. Mark Ward, Judge**

_____

**No. W2019-00459-CCA-R3-PC**

_____

The Petitioner, Johnny Wilkerson, appeals the denial of post-conviction relief from his two convictions for aggravated robbery, for which he received an effective forty-year sentence. In this appeal, the Petitioner alleges that trial counsel provided ineffective assistance in failing to investigate his case, in failing to explain why he could not have a suppression hearing, and in failing to call an alibi witness at trial. We affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and J. ROSS DYER, JJ., joined.

Earnest J. Beasley, Memphis, Tennessee, for the Petitioner, Johnny Wilkerson.

Herbert H. Slatery III, Attorney General and Reporter; Ronald L. Coleman, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Leslie Byrd, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

The Petitioner's convictions stem from the January 24, 2014 armed robbery of victims Margaret Robinson and Jason Eschhofen. State v. Johnny Wilkerson, No. W2016-00078-CCA-R3-CD, 2016 WL 6596103, at *1 (Tenn. Crim. App. Nov. 7, 2016). The victims had just left Robinson's home when the Petitioner approached them, pointed a small black gun at them, and demanded their wallets and cell phones. Id. The victims complied with these demands, and the Petitioner threatened to kill them before fleeing the scene. Id. After ensuring that the Petitioner had left the area, the victims returned to Robinson's home, where Eschhofen notified the police about the incident. Id.

Officers later used cell phone records to locate Robinson's phone in the possession of Corey Durham, who claimed he had purchased the phone from the Petitioner. Id. at *3. The police then created several photographic lineups. Id. at *1-2. The victims were unable to identify the perpetrator in the first and second lineups, which included Durham's picture; however, when the officers included the Petitioner's picture in the third photographic lineup, both Robinson and Eschhofen identified the Petitioner as the individual who robbed them. Id. *1-3. They also identified the Petitioner as the robber at the preliminary hearing and at trial. Id. at *1-2.

During the investigation, officers spoke to the Petitioner's roommate, who consented to a search of his home, and they eventually found "a small, black, toy pistol in the residence[.]" Id. at *3. Officers also found the victims' wallets inside a garbage can located on the curb in front of the Petitioner's home. Id.

The Petitioner, during his interview with police, denied any involvement in the robbery. Id. However, based on the photographic identifications of the Petitioner and the recovery of the stolen items from the Petitioner's home, officers arrested the Petitioner. Id. Later, the Petitioner told the police that Durham had robbed the victims while he waited in the car, unaware of Durham's intent to rob anyone. Id. at *4. The Petitioner claimed he only realized what had happened when Durham returned to the car with the stolen phones. Id. He acknowledged that he later tried to help Durham sell the phones. Id.

At trial, the Petitioner denied any involvement in the robbery of the victims. Id. The Petitioner stated that the toy gun the police found at his home "might have belonged to his son, who had recently visited." Id. at *5.

At the conclusion of trial, the jury convicted the Petitioner, as charged, of two counts of aggravated robbery, and the trial court imposed consecutive sentences of twenty years for each conviction. Id. The Petitioner appealed, and this court affirmed his convictions. Id. at *7.

On November 16, 2016, the Petitioner filed a timely pro se petition for post-conviction relief, alleging numerous claims. Following the appointment of counsel, the Petitioner filed an amended petition, which incorporated the previous claims and additionally alleged, in part, that counsel was ineffective in failing to file a motion to suppress evidence, statements, and photographic identifications and that counsel was ineffective in failing to pursue an alibi defense or call an alibi witness.

At the post-conviction hearing, the Petitioner testified that trial counsel failed to file a motion to suppress the photographic identifications. He said that he filed a pro se

suppression motion, which was granted by the first trial judge, but when his case was transferred to a different division, a suppression hearing never took place. He also stated that when he informed trial counsel of his desire to suppress the identifications made in the photographic lineup, trial counsel repeatedly told him that he could not have a suppression hearing because there were no statements to suppress. The Petitioner said he told her he did not understand what she meant, and trial counsel "actually turned around and walked away from [him]." On cross-examination, the Petitioner acknowledged that trial counsel informed him there was no legal basis to support a suppression motion for the photographic identifications.

The Petitioner additionally claimed that trial counsel failed to pursue an alibi defense and failed to call an alibi witness at trial. He asserted that Laura Montigo, his girlfriend at the time of the offense, would have helped his alibi defense. Although he informed trial counsel of Montigo, he said trial counsel "never took [the] initiative to contact her at all" because trial counsel claimed it "wouldn't be a help." Although the Petitioner acknowledged that he was unable to locate and present Montigo for the post-conviction hearing, he claimed that Montigo would have testified that the "toy gun apparently found under [his] refrigerator" belonged to the Petitioner's son.

Trial counsel also testified at the post-conviction hearing. She said that although she had filed suppression motions challenging identification in other unrelated cases, she did not find a legal basis to challenge the photographic identifications in the Petitioner's case. She noted that there were three photographic lineups and that it was not until the third lineup, when the Petitioner's picture was added, that the victims identified the Petitioner as the perpetrator, which added credibility to the identifications. She asserted that aside from the photographic identifications, there was substantial evidence of the Petitioner's guilt, including the presence of the victims' wallets in the Petitioner's trash, Corey Durham's statement that he bought the victim's phone from the Petitioner, and the victims' identifications of the Petitioner as the perpetrator both at the preliminary hearing and at trial. Trial counsel did not recall the Petitioner's filing a pro se suppression motion during her representation of him. She said that while the Petitioner "may have" informed her of Montigo, Montigo was "not really an alibi [witness] if she's just going to say that . . . it's a toy gun."

After the evidentiary hearing, the post-conviction court entered a written order denying relief. Regarding the Petitioner's claim that trial counsel was ineffective in failing to file a motion to suppress the photographic identifications, the post-conviction court made the following findings of fact and conclusions of law:

> The Petitioner testified that he filed a pro se Motion to Suppress his identification which was never heard. He believed that as a result his trial

counsel provided ineffective assistance of counsel. Trial counsel testified that she was not aware of any legal ground upon which to base a motion to suppress the eyewitness identifications. Petitioner has not identified any legal ground upon which such a motion should have been based and has failed to demonstrate that there is a reasonabl[e] probability that such [a] motion would have been granted. Petitioner has failed to demonstrate either "deficient performance" or "prejudice" with regard to this issue.

As to the Petitioner's claim that trial counsel failed to call an alibi witness, the post-conviction court made the following findings and conclusions:

Petitioner contends that his trial counsel should have called his girlfriend, L[a]ura Montigo, as a witness in the case because she could have testified that the toy gun that was found in the Petitioner's residence really belonged to the Petitioner's son. Ms. Montigo was not called as a witness in the post-conviction evidentiary hearing. In addition, her testimony could not be described as providing an alibi, but merely corroborating the State's proof that the Petitioner had access to the toy gun, which could have been used in the armed robbery. Petitioner has failed to demonstrate either "deficient performance" or "prejudice" with regard to this issue.

Because no evidence was presented regarding trial counsel's alleged failure to properly investigate the Petitioner's case, the post-conviction court made no findings of fact or conclusions of law regarding this issue. Following entry of the order denying post-conviction relief, the Petitioner filed a timely notice of appeal.

## ANALYSIS

The Petitioner alleges that trial counsel provided ineffective assistance in failing to investigate his case, in failing to explain why he could not have a suppression hearing, and in failing to call an alibi witness at trial. The State counters that the post-conviction court properly denied relief. We agree with the State.

Post-conviction relief is only warranted when a petitioner establishes that his or her conviction or sentence is void or voidable because of an abridgement of a

constitutional right. Tenn. Code Ann. § 40-30-103. The Tennessee Supreme Court has held:

> A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (citations and internal quotation marks omitted); see Felts v. State, 354 S.W.3d 266, 276 (Tenn. 2011); Frazier v. State, 303 S.W.3d 674, 679 (Tenn. 2010). A post-conviction petitioner has the burden of proving the factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); Tenn. Sup. Ct. R. 28, § 8(D)(1); Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Lane v. State, 316 S.W.3d 555, 562 (Tenn. 2010); Grindstaff v. State, 297 S.W.3d 208, 216 (Tenn. 2009); Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Vaughn, 202 S.W.3d at 116 (citing Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975); Strickland v. Washington, 466 U.S. 668, 687 (1984)). A petitioner successfully demonstrates deficient performance when the petitioner establishes that his attorney's conduct fell "below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688; Baxter, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. at 370 (quoting Strickland, 466 U.S. at 694). "Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." Id.

First, the Petitioner alleges that trial counsel failed to properly investigate his case and that this failure "may very well have been outcome determinative." In particular, he

claims that had trial counsel adequately investigated his case, she would have "uncovered problems with identification." He also asserts that trial counsel's failure to properly investigate resulted in her being unprepared for trial. The State responds that the Petitioner has waived this issue by raising it for the first time on appeal and that, waiver notwithstanding, the Petitioner has failed to establish that trial counsel provided ineffective assistance. We agree. The record shows the Petitioner failed to present any proof or argument supporting this claim at his evidentiary hearing, and the post-conviction court never addressed this issue in its order denying relief. Consequently, the Petitioner has waived this issue. See Tenn. R. App. P. 36(a); Cauthern v. State, 145 S.W.3d 571, 599 (Tenn. Crim. App. 2004) ("[A]n issue raised for the first time on appeal is waived."); see also Brimmer v. State, 29 S.W.3d 497, 530 (Tenn. Crim. App. 1998) (concluding that the Petitioner waived issues by failing to present any evidence concerning these issues at the post-conviction hearing). In any case, given that absolutely no proof was presented on this claim at the post-conviction hearing, the Petitioner has failed to establish that trial counsel's performance was deficient and prejudicial. Accordingly, we conclude the Petitioner is not entitled to relief on this claim.

Second, the Petitioner claims that trial counsel failed to "explain to [him] why he could not have a suppression hearing" on the photographic identifications and asserts that this failure was "outcome determinative." The State initially argues that the Petitioner has waived this issue by raising it for the first time on appeal. Alternatively, the State contends that, even if this issue is interpreted as a claim regarding trial counsel's failure to file a suppression motion, the post-conviction court properly denied relief because counsel made a strategic decision not to file a frivolous motion and the Petitioner has failed to show that a such a motion would have been successful. We agree that the Petitioner has failed to establish that trial counsel provided ineffective assistance as to this issue. At the post-conviction hearing, the Petitioner never presented a ground upon which a suppression motion could have been made, and trial counsel testified that she could find no legal basis to support such a motion. "It is a petitioner's burden to submit evidence (and not just his testimony surmising on the merits of a pre-trial suppression motion) that the suppression motion would have been granted and that there is a reasonable probability that the trial proceedings would have concluded differently if trial counsel had pursued a motion to suppress evidence." Charles Bradford Stewart v. State, No. M2015-02449-CCA-R3-PC, 2017 WL 2645651, at *14 (Tenn. Crim. App. June 20, 2017); see Terrance Cecil v. State, No. M2009-00671-CCA-R3-PC, 2011 WL 4012436, at *8 (Tenn. Crim. App. Sept. 12, 2011) ("In order to show prejudice, Petitioner must show by clear and convincing evidence that (1) a motion to suppress would have been granted and (2) there was a reasonable probability that the proceedings would have concluded differently if counsel had performed as suggested."). Here, the Petitioner failed to present any evidence that a suppression motion would have been granted. The Petitioner also failed to show a reasonable probability that had a suppression motion been

pursued, the outcome of his case would have been different, especially in light of the other overwhelming evidence of his guilt. Because the Petitioner has failed to establish that trial counsel's performance was deficient and prejudicial as to this issue, he is not entitled to relief.

Finally, the Petitioner asserts that trial counsel failed "to call an alibi witness that [he] believes would have made a difference in his trial" and contends that this failure was "outcome determinative." The State counters that this claim fails because the Petitioner never called Laura Montigo to testify at the post-conviction hearing. The State also asserts that because Montigo's testimony did not establish an alibi for the Petitioner, it would not have affected the outcome of his trial. We agree that the Petitioner, by not having Montigo testify at the post-conviction hearing, has failed to establish that he was prejudiced by trial counsel's failure to present her at trial. See Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990) (stating that whenever a petitioner argues that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented at the post-conviction hearing because this is the only way the petitioner can show that this failure to discover, interview, or present these witnesses inured to his prejudice). We also note that even if Montigo had testified in accordance with the Petitioner's claims, she would not have been an alibi witness. As the post-conviction court recognized, Montigo's testimony would have "merely corroborating the State's proof that the Petitioner had access to the toy gun, which could have been used in the armed robbery." Accordingly, the Petitioner is not entitled to relief.

## CONCLUSION

Based on the aforementioned authorities and reasoning, the judgment of the post-conviction court is affirmed.

_____
CAMILLE R. McMULLEN, JUDGE